### Ruth Evelyn Davis v. Roger Edward Davis

[449 A.2d 947]

No. 83-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed July 7, 1982

*Jeremy Dworkin,* South Londonderry, for Plaintiff-Appellee.

*Black, Black & Shreve,* White River Junction, for Defendant-Appellant.

**Peck, J.** Plaintiff and defendant were divorced by an order of the Windsor Superior Court dated September 27, 1976. Defendant was ordered to pay to plaintiff a specified amount weekly as support for the two minor children born of the union.

Prior to the divorce, defendant had become totally and permanently disabled as the result of an industrial accident. Because of his disability, but subsequent to the 1976 order, he commenced receiving monthly social security payments. At approximately the same time, plaintiff received a check from the Social Security Administration covering child support retroactive to the date of defendant's disability, and since that time she has received monthly social security payments for the same purpose.

On February 28, 1980, as a result of various motions by the parties, including a petition for contempt instituted by plaintiff against the defendant, the court "amended and modified" the original (1976) order.[1] It is important to note that the 1980 order was based primarily on an agreement executed under oath and filed by the parties acknowledging that plain-

---

[1] There had been an intervening amending order issued on December 13, 1979, which included a child support requirement of $50 weekly. In the 1980 proceedings, however, defendant moved to strike this order in its entirety; this motion was granted and the 1976 order was restored and amended (paragraph numbered 2 of the February 28, 1980, order).

tiff had received and would continue to receive monthly child support payments from the government, and that defendant also receives monthly a total disability pension.

The amended order of 1980 directed defendant, as agreed in the stipulation, to make weekly payments of $30 to plaintiff for child support to commence on September 5, 1980, and to pay all arrearages plus the anticipated arrearage from January 1, 1980, through August 31, 1980. The arrearage and anticipated arrearage totaled $3130.

Defendant never made any of these payments personally; that fact is not in dispute. Accordingly, on October 2, 1980, plaintiff filed another motion for contempt against him. Defendant responded on October 29, 1980, with a motion to dismiss alleging that his child support obligations, including any arrearages, had been satisfied. On the same date, defendant filed a motion for relief from the order of February 28, 1980, under V.R.C.P. 60(b), and on November 7, 1980, he amended his latter motion to ask that the agreement between the parties, upon which the court's 1980 order was based in part, be stricken. These several motions were heard together on November 3, 1980.

In its conclusions, the trial court, in the present phase of this case, stated that it was unable to "find from the evidence presented that defendant's conduct was wilful and contemptuous." Nevertheless, the court ordered that plaintiff recover of defendant the sum of $3400, the alleged total arrearage, plus attorney's fees of $885. Additionally, the court imposed a lien on the former homeplace of the parties to secure payment of the judgment, and finally, both motions of defendant were denied. Defendant appeals.

We first address defendant's claim that he is entitled to credit for the federal child support payments against his obligations under the prior orders of the court. Defendant's argument is based on the proposition that it is only equitable for his support obligations to be considered fully satisfied by the federal payments (including arrearages) made and being made to the plaintiff because of his disability. This is an issue of first impression here, but defendant directs our attention to cases from other jurisdictions which hold that an obligor under a support order is entitled to credit for social security

or other government benefit payments made to the obligee for the same purpose. See, e.g., *Griffin* v. *Avery,* 120 N.H. 783, 787–88, 424 A.2d 175, 177 (1980); *Cohen* v. *Murphy,* 368 Mass. 144, 330 N.E.2d 473 (1975).

We agree with defendant that equity and fairness demand that consideration be given to government child support benefits paid to the party having custody. These payments are, in a sense, a substitute for wages the obligor would have received but for the disability, and from which the court ordered payments would otherwise have been made. Moreover, it may be, as it is in this case, that the government benefits alone are several times greater than the support payments required by the court. In theory, at least, the actual *source* of payments is of no concern to the party having custody as long as they are in fact made.

█ The cases from other jurisdictions which have considered this question are not uniform in their approach to the problem. Some courts appear to hold that credit for government benefits paid to the party having child custody should be applied as a matter of law; others hold that credit should be applied unless the court indicates expressly that the amounts payable under its order are to be *in addition* to the government benefits. See Annot., 77 A.L.R.3d 1315 (1977). We think the latter is the better rule and hereafter should be observed by the trial courts in these cases.

The court below did not rule expressly on the question as would have been the better course. Nevertheless, we do not think there is any reasonable ambiguity as to its intent that the payments required of the defendant are to be in addition to the social security benefits already being paid to the plaintiff. Accordingly, since this is, as noted above, a case of first impression here, this failure, standing alone, does not constitute grounds for reversal.

The agreement of the parties is subject to the interpretation that notwithstanding the government benefits being paid to the plaintiff, defendant would pay, personally and directly, $30 per week for the support of his two minor children. He argues strenuously that this was neither his understanding nor his intent; it was, nevertheless, the construction placed

upon it and clearly adopted by the trial court in its conclusions and order.

We are not unmindful of the burden placed on defendant by the trial court's order. We are cognizant as well of the difficulties he may encounter in demonstrating a change in circumstances should he now seek a modification of the order. *Ohland* v. *Ohland*, 141 Vt. 34, 38, 442 A.2d 1306, 1308 (1982). Nevertheless, the construction of this agreement was a proper function of the court below; it is a reasonable, if not virtually an inescapable, construction. It is therefore free from error.

Defendant next argues that regardless of how we decide the question of credit for federal benefits the case should be remanded for further findings as to his ability to pay the arrearages and continuing child support obligations. We disagree.

The trial court concluded that defendant's conduct was not wilful and contemptuous. Thus, our holding in *Spabile* v. *Hunt*, 134 Vt. 332, 335–36, 360 A.2d 51, 55 (1976), that the findings of fact must demonstrate ability to comply with the court order before one may be held in contempt is inapplicable. In the instant case the trial court merely reduced the outstanding claim to judgment. See 15 V.S.A. § 760. There is no error.

*Affirmed.*