491 A.2d 1374

**CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY**

v.

**William CHORGO, Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1984.

Filed April 19, 1985.

514

David M. Priselac, Pittsburgh, for appellant.

Alida J. Kornreich, Pittsburgh, for appellee.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

BROSKY, Judge:

This appeal is from an order denying credit toward a support order for Social Security payments made to appellant's children. Appellant contends that his child support obligation should be reduced by the amount of the Social

Security retirement payments. We agree, but not as to the arrears which accumulated before the Social Security payments began. Accordingly, we reverse.

Children and Youth Services (CYS) commenced this action to enforce a support order and to compel the payment of arrearages. The court below held that the support order should continue at the prior rate; that no credit should be given towards the support obligation for Social Security benefits of the appellant paid directly to the children; and that arrearages should be paid at the rate of $50 per month.

Two broad issues are before us on this appeal. First, whether, and under what conditions, the support obligation should be reduced by the amount of Social Security retirement benefits paid to the children. Second, whether, and under what conditions, the arrearages should be reduced as a result of these payments. Each issue will be treated in turn.[1]

## Credit for Social Security Payments

Within this issue there are three questions to be answered. Why should credit be given or not given? If credit is to be given, when? Finally, if credit is to be given, how much? Again, these questions will be treated in turn.

First, why should credit be given? The first cases we will quote seem to answer this question with, "Why not?" The Vermont Supreme Court noted that: "These payments are, in a sense, a substitute for the wages the obligor would have received but for the disability, and from which the court ordered payments would otherwise have been made.... In theory, at least, the actual source of payments is of no concern to the party having custody as long

1. The case of *Commonwealth v. Vogelsong,* 311 Pa.Super. 507, 457 A.2d 1297 (1983), is the only reported appellate case in this jurisdiction to treat this matter. However, both of the above stated issues are ones of first impression in this Commonwealth. The first issue was not treated in *Vogelsong.* The second issue was treated in the inverse from its posture here. *Vogelsong* held that it was not error for the trial court to have granted credit on arrearages. We must decide if it was error for the trial court to *not* have granted such credit.

as they are in fact made." *Davis v. Davis*, 141 Vt. 398, 401, 449 A.2d 947, 948 (1982).[2]

The same practical approach was taken in *Binns v. Maddox*, 327 So.2d 726, 728 (Ala.Ct.App.1976).

An order of support is for the benefit of the children, even though directed to be paid to the mother or other custodian. *If the sum directed to be paid by the father is paid by the government through social security benefits derived from the account of the father, the purpose of the order has been accomplished.* The father is entitled to be credited with such payments against his liability under the decree.

In a similar vein, the Missouri Court of Appeals wrote the following: "The use of social security payments to satisfy a child support obligation is merely a change in the manner of payment; the nature of the funds is the same." *McClaskey v. McClaskey*, 543 S.W.2d 832 (Mo.Ct.App.1976).

None of the foregoing provides an extremely persuasive rationale for the acceptance, *vel non*, of credit. A more cogent rationale oft-quoted by other jurisdictions, is presented in *Andler v. Andler*, 217 Kan. 538, 542–3, 538 P.2d 649, 653 (1975). *Andler* focuses on the "earned" character of Social Security benefits. Since the person obliged to pay support has, in effect, paid for those benefits in advance, he should, it is argued, receive credit for them.[3]

Social Security benefits paid to the appellee for the benefit of the parties' minor children as the result of the appellant's disability may not, however, be regarded as gratuitous. On the contrary, the payments received by the appellee are for the children as beneficiaries of an

2. To the same effect see *Chase v. Chase*, 74 Wash.2d 253, 444 P.2d 145 (1968).

3. Several cases from other jurisdictions have arrived at the same conclusion. *In re the Marriage of Robinson*, 651 P.2d 454 (Colo.Crt. App.1982); *Horton v. Horton*, 219 Ga. 177, 132 S.E.2d 200 (1963); *Mooneyham v. Mooneyham*, 420 So.2d 1072 (Miss.1982); *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962); *Mask v. Mask*, 95 N.M. 229, 620 P.2d 883 (1980); *Cohen v. Murphy*, 368 Mass. 144, 330 N.E.2d 473 (1975).

insurance Policy. The premiums for such policy were paid by the appellant for the children's benefit. The purpose of Social Security is the same as that of an insurance policy with a private carrier, wherein a father insures against his possible future disability and loss of gainful employment by providing for the fulfillment of his moral and legal obligations to his children. This tragedy having occurred, the insurer has paid out benefits to the beneficiaries under its contract of insurance with the appellant, and the purpose has been accomplished.

The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the work force the protection and security of insurance against future disability. The fundamental nature of the Social Security system is a form of insurance in every sense of that word.

Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are no more gratuitous than benefits paid out by a private insurance company.

. . . .

The insurance company here in issue was considered by the federal district court in *Schmiedigen v. Celebrezze,* 245 F.Supp. 825 (D.D.C.1965) where the court said:

> [The] payments prescribed by them [the Social Security Act] are not gratuities or matters of grace; they are not public assistance; they are not welfare payments. On the contrary, the law created a contributory insurance system, under which what in effect constitute premiums are shared by employees and employers. Consequently, in spirit at least, if not strictly and technically, the employee, who throughout his working life has contributed part of the premiums in the form of deductions from his wages or salary, should be deemed to have a vested right to the payments prescribed by the statutory scheme, which in effect comprises the

terms of his insurance policy. He has earned the benefits; he is not receiving a gift...." (p. 827.)

In *Craver v. Craver*, 649 S.W.2d 440, 443 (Mo.1983), the high court of Missouri rejected the holding of *McClaskey*, viewing the matter strictly and technically, rather than in spirit.

We must reject the notion that a contributor possesses any significant property interest in Social Security funds in the hands of the government, for it ignores both the theory behind, and the reality of, the Social Security system. First, the relationship between the government and the contributor is not contractual. *Flemming v. Nestor*, 363 U.S. 603, 610 [80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435] (1960). Second, Congress has always specifically reserved the "right to alter, amend, or repeal any provision" of the Social Security Act. See 42 U.S.C. § 1304 (1975). Consequently, whatever equitable interest a contributor might possess is only contingent. It does not rise to the level of a vested property interest.

It appears that the court in *Craver* lost sight of the question presented by this type of case. The issue is not whether, technically speaking, a Social Security recipient has a vested right in the nature and amount of the benefits. Rather, the enquiry should be whether it is fair and just that the support obligor be given credit for these benefits. Part of this enquiry would certainly go to the nature of his investment in the program—as in *Andler*. Another, essential part of the determination would be the difference, if any, to the obligee—as in *Davis, Binns* and *McClaskey*.

Both portions of this dual enquiry are resolved in favor of allowing credit. First, since the obligor has paid in advance for these benefits over the years (albeit mandatorily), they should be recognized as the fruits of his labor. Second, since the child will still receive the same amount of support which the court has decided he should have, it does not matter to that party that the obligor is given credit.

Accordingly, we hold that credit should be given for social security payments made directly to the child when the obligor's employment occasioned the benefits. As a consequence, the amount of child support directly payable by appellant should be reduced by the amount of the social security benefits.

Second, when should credit be given? Four options are before us: that credit must always be given; that credit will not be given unless special requirements are met; that the court may in its discretion award credit; and finally, that there is a presumption that credit will be applied, which is rebutted only by articulated reasons supporting a conclusion to the contrary in the court's support order.

Research has revealed no case which clearly adopts the first option of mandatory application.

The second of these options is illustrated by the following quotation from *Joachim v. Joachim,* 57 A.D.2d 546, 547, 393 N.Y.S.2d 63, 64 (1977): "We hold that the Social Security payments to plaintiff for the benefit of the child do not relieve defendant, even pro tanto, from his obligation to pay for the support of his child in the absence of a showing of financial inability."

The third option is followed in *Chase,* supra, 74 Wash.2d at 259, 444 P.2d at 149.

The disability and resulting entitlement to social security are changes in condition of the parties to be considered in a modification proceeding but do not give rise to a modification or deduction without affirmative action by the court for they are not necessarily determinative. The father may be independently wealthy; or he may, in the interim, have inherited property. Benefits from private or public retirement systems may have accrued and become payable to him. In short, many developments affecting the economic condition of the parties may have occurred which would not permit or warrant a modification of the decree to the extent of deducting the social security benefits for dependent children from the child support ordered in a divorce.

The fourth option was chosen in *Davis,* supra, 141 Vt. at 401, 449 A.2d at 948–49.

The cases from other jurisdictions which have considered this question are not uniform in their approach to the problem. Some courts appear to hold that credit for government benefits paid to the party having child custody should be applied as a matter of law; others hold that credit indicates expressly that the amounts payable under its order are to be in addition to government benefits. See Annot., 77 ALR3d 1315 (1977). We think the latter is the better rule and hereafter should be observed by the trial courts in these cases.

We adopt the last of these options. The first option, invariable mandatory credit, is insufficiently flexible for the trial court's needs. While general rules and guidelines are desirable for consistency of results, the trial court must have the ability to fashion its orders around the contours of specific fact situations.

The second option—financial inability—puts too much of an obstacle in the way of recognizing the government benefits. For the same reasons that credit should be given at all, it should not be too difficult for that credit to be activated.

While the third option—discretionary credit—presents less of an obstacle to according credit than the second option, it does not go far enough. The court must affirmatively choose to give credit.

■ Thus, it is the last option which strikes the right balance. Credit is given as the default value; it need not be chosen. In the other direction, the court still has the ability to alter the presumption and give partial or no credit, should the circumstances justify it.

■ The last question in this section remains. Since credit is to be given, and given absent reasons articulated by the court to the contrary, can amounts in excess of the support obligation be applied prospectively to reduce future support payments? We do not believe such an application

should be allowed. It would ignore the children's need for regular, periodic support payments. We agree with the holding in *Andler*, supra, 217 Kan. at 544, 538 P.2d at 654: "The father is entitled to credit, however, only up to the extent of his obligation for monthly payments of child support, but not exceeding it. Here the excess of $61.10 paid each month must be regarded under the divorce decree as a gratuity to the children. While the $61.10 is not a gratuity in the sense that it represents the children's vested right under the insurance concept of the Social Security system, it nevertheless is a gratuity under the divorce decree to the extent it exceeds the amount ordered in the divorce decree." See also *Mask, supra,* 95 N.M. at 231, 620 P.2d at 885; *Mooneyham v. Mooneyham,* 420 So.2d at 1074; *Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976).

## Arrearages

The next issue for our disposition is whether the social security payments can be applied to arrearages in the support payments. Three distinct types of arrearages can arise and each requires separate consideration.[4] First, there are arrearages which accrued prior to the start of the disability or retirement.[5] Second, there are arrearages which accrued after the start of retirement or disability eligibility (and concurrent application for benefits), but before benefits were received. Governmental bureaucracies like the courts, often move with exceeding slowness; it is not unheard of for it to take a year for an application for benefits to be processed. Third, there are arrearages which accrued after the benefits were being received by the obligee and which exist by virtue of those payments not being

4. The facts as set out in a number of opinions do not make this sort of distinction and cannot, therefore, be used for guidance in coming to our resolution of the issue. *Perteet v. Sumner,* 246 Ga. 182, 269 S.E.2d 453 (1980); *Newton v. Newton,* 622 S.W.2d 23 (Mo.Crt. of App.1981); *Schulze v. Jensen,* 191 Neb. 253, 214 N.W.2d 591 (1974); *Robinson,* supra.

5. This treatment would also apply to those situations in which the obligor delayed after he became eligible in submitting his application for benefits. The cases of other jurisdictions reveal this set of events.

applied to the support obligation.[6] We have come to different answers for each of these types of arrearage.

### A. *Arrearages accrued prior to start of disability or retirement.*

■ We do not hesitate in declaring unequivocally that, when support payments are not made prior to the start of disability or retirement, that any excess in the benefits over the amount needed for current support cannot be applied to those arrearages. Once again we quote *McClaskey*, supra, 543 S.W.2d at 835.

> During this time—from the divorce until the monthly benefits began—the wife was entitled prima facie to look to the husband for full and prompt payment of his obligation. This, because a child's need for food, clothing, lodging and other necessary expenses is current—today, this week, this month—and the expectation of a future payment does not meet those needs. To allow the lump-sum payment to be credited against the father's delinquencies, as he urges us to do, could permit him to deliberately create those delinquencies, thereby depriving his children of support, all in the hope that some accrued benefit would cancel his growing default. When the windfall comes, equitably it should inure not to the defaulting husband's benefit, but to his bereft children.

We approve of, and adopt, this cogent and concise treatment of this issue.[7]

On this same issue, but using a different analysis, our sister state of Ohio came to the same result.

> The mother's first assignment of error is well taken. The Social Security Act, Title 42 U.S.Code, Section 401 et seq., provides that every dependent child of an individual who is entitled to Social Security benefit shall be entitled to a

---

6. An entirely different situation would be presented by an arrearage which came into being simply because the benefits were less than the support obligation and the difference was not made up by the obligor. This would be a "run of the mill" arrearage, and not the subject of this opinion.

7. To the same effect see *Fowler v. Fowler,* 156 Conn. 569, 244 A.2d 375 (1968); *Mask v. Mask,* supra.

child's insurance benefit. See, 42 Title 42, U.S.Code, Section 402(d)(1). We determine from this that the benefit inures directly to the child notwithstanding the prerequisite status of the parent.... Thus, the court is, in effect, ordering the children to pay the accrued arrearages for their own support.

B. *Arrearages accrued after start of disability or retirement but before the start of benefit payments.*

For the reasons stated in the quotation above from *McClaskey,* we are loath to conclude that excess benefits subsequently received can be applied to retroactively erase this type of arrearage. On the other hand, we are also mindful that the very existence of the retired status, or even more so, the disability, gives rise to the real possibility that the obligor may not be financially able, pending receipt of the benefits, to comply with the support order.

> The entire period for which the adjudicated support obligation accrued was a period during which plaintiff was unable to work and hence the Social Security payments here must be regarded as fully substitutionary for the lost earning power. It does not appear that plaintiff had any other income sufficient to meet the support obligation or that his failure to provide support was in any way willful or contumacious. In our view, therefore, the receipt by defendant of the lump sum payment is equitably required to be deemed in full satisfaction of any outstanding obligation of plaintiff which had accrued as of that time.

*Potter v. Potter,* 169 N.J.Super. 140, 149, 404 A.2d 352, 356–7 (1979).

In the interest of securing support payment when due, whenever possible, the obligor should go to court with the excuse of inability to pay at the time of that inability. It may be that failure to do so would result in a waiver. However, we need not decide that at this time, since, even if there were such a requirement, it would be inequitable to hold appellant to it. The injustice would be the result of

appellant having no notice of the requirement. Accordingly, on remand appellant may demonstrate that he was unable to pay during the period in question in this section.

## C. *Arrearages accrued after the start of benefit payments.*

Again, we emphasize that the arrearages considered herein are those which arose by virtue of the non-discretionary non-application of the benefits to the support obligation. This type of arrearage will cease to exist over time as the Courts of Common Pleas apply the law in this case to the cases before them.

█ We have already held that credit as to ongoing support obligations should be given absent a provision in the support order to the contrary. With the scales so weighed in favor of credit, it follows that credit should also be given for benefits paid against arrearages which exist solely as the result of such credit not being explicitly granted. See *Binns v. Maddox, supra; Mooneyham, supra; Freshour v. Freshour,* 567 S.W.2d 176 (Crt.App.Tenn. 1977).

Some cases have held that such credit should not be given until the court enters an order to that effect. *Zirkle v. Zirkle,* 304 S.E.2d 664 (West Va.1983); *Cope v. Cope,* 291 Or. 412, 631 P.2d 781 (1981); *Nakaerts v. Nakaerts,* 106 Ill.App.3d 166, 61 Ill.Dec. 950, 435 N.E.2d 791 (1982); *Thompson v. Thompson,* 254 Ark. 881, 496 S.W.2d 425 (1973); *Chase, supra.* We do not accept that approach. Since, under our above stated holding, the court will be deemed (unless it specifically articulates reasons to hold otherwise), to have granted, credit, it would not be consistent to require an extra proceeding of the obligor as a consequence of the court not following our mandate.

\*     \*     \*     \*     \*     \*

To summarize, we hold that appellant should not be given credit from excess benefits to be applied to arrearages which accrued prior to his application for retirement benefits; that credit should be applied to arrearages which

accrued between his application and the commencement of benefits if appellant can show that he was financially unable to make payments during that period, that credit should be applied to arrearages which accrued after the receipt of benefits; that credit should be given on an ongoing monthly basis; and that credit should not be given prospectively out of excess benefits.

\*      \*      \*      \*      \*      \*

Reversed and remanded for evidentiary and computational proceedings consistent with this opinion. Jurisdiction relinquished.