870 F.2d 969
 57 USLW 2575
 Elizabeth STROOP; Melissa Lam, by her next friend Elizabeth
Stroop; Bret Lam, by his next friend Elizabeth Stroop;
Jamie Stroop, by her next friend Elizabeth Stroop; Geneva
Powers; Crystal McClanahan, by her next friend Geneva
Powers; Dorothy Brown; Robert Lee Turner, by his next
friend Dorothy Brown, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellees,
and
Karen B. Carter; Ragene Carter, by her next friend Karen B.
Carter; Paula Jones; Cory P. Jones, by his next
friend Paula Jones; David L. Jones, Plaintiffs,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellant,
and
Larry D. Jackson, Commissioner of the Virginia Department of
Social Services, Defendant,
Center for Law and Social Policy, Amicus Curiae.
Elizabeth STROOP; Melissa Lam, by her next friend Elizabeth
Stroop; Bret Lam, by his next friend Elizabeth Stroop;
Jamie Stroop, by her next friend Elizabeth Stroop; Geneva
Powers; Crystal McClanahan, by her next friend Geneva
Powers; Dorothy Brown; Robert Lee Turner, by his next
friend Dorothy Brown, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellants,
and
Karen B. Carter; Ragene Carter, by her next friend Karen B.
Carter; Paula Jones; Cory P. Jones, by his next
friend Paula Jones; David L. Jones, Plaintiffs,
v.
Larry D. JACKSON, Commissioner of the Virginia Department of
Social Services; Otis R. Bowen, Secretary,
Department of Health and Human Services,
Defendants-Appellees,
Center for Law and Social Policy, Amicus Curiae.
 Nos. 88-2530, 88-2538.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1988.
Decided March 28, 1989.
Rehearing and Rehearing In Banc Denied May 31, 1989.
 
 Robert David Kamenshine (John R. Bolton, Asst. Atty. Gen., Robert S. Greenspan, Civil Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for appellant/cross-appellee.
 Jamie Britton Aliperti (Rappahannock Legal Services, Jill A. Hanken, Cherry C. Harman, Virginia Poverty Law Center, Richmond, Va., Claire E. Curry, Charlottesville Legal Aid Society, Charlottesville, Va., Holly S. Peters, Legal Aid Society of Roanoke, Roanoke, Va., Cheryl D. Footman, Norfolk, Thelma Y. Carroll, Tidewater Legal Aid Society, Virginia Beach, Va., on brief), for appellees/cross-appellants.
 (Josephine Foehrenbach, Center for Law and Social Policy, on brief), for amicus curiae.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 In this class action, custodial parents receiving aid to families with dependent children (AFDC) appeal from the district court's grant of summary judgment to defendants, the Secretary of the Department of Health and Human Services and the Commissioner of the Virginia Department of Social Services (collectively, the Secretary). The district court upheld the Secretary's interpretation of federal statutes and regulations requiring applicants for AFDC to include, for the purpose of determining family income, brothers and sisters living in the same household who receive Title II social security payments.
 
 
 2
 The Secretary cross-appeals the district court's grant of summary judgment to the parents, requiring the Secretary to disregard as income the first $50 of the Title II social security benefits.
 
 
 3
 We affirm on both issues.
 
 
 4
 * Plaintiffs are custodial parents who sue in behalf of their children who do not share the same father. In each case, some of the children in the household receive social security payments under Title II of the Social Security Act because of the insured status of their disabled or deceased fathers. Other children in the household receive AFDC only. The custodial parent in each case is the representative payee of the Title II payments, and the applicable statute provides that the representative payee must use the payments for the "use and benefit" of the beneficiary. Failure to do so will result in criminal prosecution. 42 U.S.C. Sec. 407(e). The statute also contains an "anti-alienation" provision, 42 U.S.C. Sec. 407(a), barring transfer of the right to receive future payments and exempting all payments from attachment, garnishment, and other legal process.
 
 
 5
 Before 1984, a family applying for AFDC was not required to include all resident family members but could exclude in its application family members who received support from other sources. As part of the Deficit Reduction Act of 1984 (DEFRA), Congress amended the AFDC program to require that a family's eligibility for benefits must take into account the income of parents, brothers, and sisters living in the same home.[1]
 
 
 6
 The Secretary promulgated regulations which have been interpreted to require inclusion of Title II social security payments in the family income for AFDC purposes.[2] In this case, interpreting the amendment to include Title II social security payments will result in substantial diminution of AFDC benefits to each named plaintiff and, in one instance, the elimination of AFDC eligibility altogether.
 
 II
 
 7
 The parents assert that inclusion of social security payments in the AFDC calculation violates the "anti-alienation" and representative payee provisions of Title II of the Social Security Act.
 
 
 8
 We join the Eighth, Ninth, and Eleventh Circuits in rejecting the parents' argument. See Gorrie v. Bowen, 809 F.2d 508, 517 (8th Cir.1987), cited with approval in Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 3013 n. 5, 97 L.Ed.2d 485 (1987); Creaton v. Bowen, 826 F.2d 6 (9th Cir.1987); Oliver v. Ledbetter, 821 F.2d 1507 (11th Cir.1987) (addressing representative payee provision only). We adopt the court's reasoning in Gorrie:
 
 
 9
 The anti-alienation provision imposes a broad bar against the use of any legal process to reach Social Security benefits. The Secretary's regulation does not subject Title II benefits to legal process, however, nor does it result in an assignment or transfer of benefits. It requires only that Title II benefit recipients apply for AFDC and have their incomes included in the family filing unit. This does not constitute a use of legal process to garnish or attach benefits.
 
 
 10
 Gorrie, 809 F.2d at 517.
 
 
 11
 Similarly, the parents' contention that inclusion of social security payments violates the representative payee provision is without merit. The parents suggest that including social security payments in family income forces the representative payees to violate their statutory duties by using Title II payments for family members other than the beneficiary. The Supreme Court rejected this argument in the context of child support payments from noncustodial parents and the Court's reasoning is instructive here:
 
 
 12
 [T]he simple inclusion of support income in the benefit calculation [has no] legal effect on the child's right to have it used for his or her benefit. To the extent that a child has the right to have the support payments used in his "best interest," he or she fully retains that right....
 
 
 13
 [I]t is instructive to ask what would happen to the support payments if there were no AFDC program at all. In that case, it would appear that custodial parents would have to use a much greater portion of the support payments to sustain the family unit, since it could hardly be deemed in the child's best interest for his custodial parent and siblings to have no funds whatsoever.
 
 
 14
 Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 3019-20 & n. 20, 97 L.Ed.2d 485 (1987).
 
 
 15
 The representative payee provision requires that the funds be used for the "use and benefit" of the beneficiary. Consistent with Gilliard, we hold that requirement does not preclude use of the funds for common household expenses typically shared by all household members, for the child is nonetheless benefited by such use. See Gilliard, 107 S.Ct. at 3016 n. 14. Nor can it be said that spending all of the funds on the child recipient would benefit the recipient if to do so would leave brothers and sisters impoverished.
 
 
 16
 We also concur with the eighth circuit that Congress intended Sec. 602(a)(38) to be enforced notwithstanding the representative payee provision of Title II. Congress expressly referred to Sec. 405(j), which governs the certification of representative payees and contains the use and benefit restriction. Congress's reference to Sec. 405(j) suggests that it intended to reconcile any possible incongruence between the implementation of section 602(a)(38) and section 405(j). It follows then that a representative payee will not be subject to criminal sanctions for including Title II payments in the family income. See Gorrie, 809 F.2d at 518.
 
 
 17
 The Secretary's interpretation of the DEFRA amendment accords with legislative history. The Senate Report states that Sec. 602(a)(38) would "end the present practice whereby families exclude members with income in order to maximize family benefits and will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole." S.Rep. No. 494, 97th Cong., 2d Sess. 47, reprinted in 1982 U.S.Code Cong. & Admin.News 781, 823.
 
 
 18
 The parents claim that Congress rejected the Secretary's interpretation in 1986. Specifically, the Senate proposed an amendment to DEFRA as part of the Tax Reform Act of 1986 which would have removed all doubt that Title II payments were to be included in determining a family's AFDC eligibility. See S.Rep. No. 313, 99th Cong., 2d Sess. 1075 (1986). But the House conferees did not accept this amendment.
 
 
 19
 We do not subscribe to the parents' theory. The Conference Committee Report specifically stated that "the agreement does not include that portion of the Senate amendment concerning Title II benefits and certain child support payments. No inference is intended with regard to current federal regulations implementing Section 402(a)(38) of the Social Security Act [42 U.S.C. Sec. 602(a)(38) ]." H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. 854, reprinted in 1986 U.S.Code Cong. and Admin.News pp. 4075, 4942. The Secretary's regulation challenged in this suit was in effect in 1986. We conclude that the conferees intended that their refusal to adopt the Senate amendment should not be construed as a disagreement with the Secretary's regulations interpreting the DEFRA amendment. Cf. National Muffler Dealers Assoc. v. United States, 440 U.S. 472, 486, 99 S.Ct. 1304, 1311, 59 L.Ed.2d 519 (1979).
 
 
 20
 We hold that the Secretary's interpretation of the DEFRA amendment to the AFDC program is reasonable, and we affirm the district court's grant of summary judgment.
 
 III
 
 21
 The Secretary cross-appeals the district court's grant of summary judgment holding that the Secretary's refusal to disregard as income the first $50 of Title II social security child benefits is not authorized by 42 U.S.C. Sec. 602(a)(8)(A)(vi). The statutory provision in question states:
 
 
 22
 ... in making the [eligibility] determination under paragraph (7), the State agency ... (vi) shall disregard the first $50 of any child support payments received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including support payments collected and paid to the family under Sec. 457(b)) [42 U.S.C. Sec. 657(b) ].
 
 
 23
 42 U.S.C. Sec. 602(a)(8)(A)(vi). Resolution of this issue turns upon the definition of child support payments. The question is whether social security payments are child support payments within the meaning of Sec. 602(a)(8)(A)(vi). Congress has offered no answer to this question, and the Secretary has not issued a regulation pertaining to it.
 
 
 24
 In construing legislation, it is our duty to provide ordinary meaning to ordinary words. Burns v. Alcala, 420 U.S. 575, 580-81, 95 S.Ct. 1180, 1184-85, 43 L.Ed.2d 469 (1975). Moreover, "[i]t is well established that our task in interpreting separate provisions of a single Act is to give the Act 'the most harmonious, comprehensive meaning possible' in light of the legislative policy and purpose." Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 631-32, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973). Finally, if one among alternative constructions would involve serious constitutional difficulties that interpretation should be rejected in favor of another. United States v. Clark, 445 U.S. 23, 33-34, 100 S.Ct. 895, 902-03, 63 L.Ed.2d 171 (1980); United States v. Harriss, 347 U.S. 612, 618 n. 6, 74 S.Ct. 808, 812 n. 6, 98 L.Ed. 989 (1954). With these principles of statutory construction in mind, we address the Secretary's arguments.
 
 
 25
 In contending that child support payments do not include social security payments, the Secretary relies on the legislative history of a predecessor statute. Congress initially created the $50 disregard in 1974 to provide an incentive to a custodial mother to obtain child support from the child's father. See S.Rep. No. 1356, 93rd Cong., 2d Sess. 23, reprinted in 1974 U.S.Code Cong. & Admin.News 8133, 8155.
 
 
 26
 It is axiomatic that the intent of one Congress cannot be inferred from the activities of another Congress. United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). In 1974, AFDC recipient cooperation was not a prerequisite to receiving benefits. Also, at that time social security payments were not a factor in determining a family's eligibility for AFDC, so there was no occasion for Congress to consider whether the disregard should also apply to such payments. In 1984 when the current provision was adopted, cooperation was a prerequisite, and AFDC recipients had existing incentives to cooperate in ensuring that child support payments were made. Moreover, amendments to 42 U.S.C. Sec. 658 have enhanced the states' incentives for tracking down nonresident parents who are delinquent in making child support payments. The Secretary's argument that the $50 disregard serves as a financial impetus is substantially eviscerated by legislative acts of the past 14 years, and it is unsupported by the legislative history of the current provision.
 
 
 27
 The only pronouncement about the purpose of the current disregard provision has come from the Supreme Court which reasoned that the disregard of the first $50 paid by a father serves to mitigate the burden of the changes wrought by the DEFRA amendments. Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987).[3] Although the question of Title II payments was not before the Court, it is apparent that disregard of the first $50 of social security payments, which are received in lieu of payments made by a father, serves the same purpose.
 
 
 28
 The Secretary suggests that Congress did view child support and social security benefits as distinct items because it noted that under the law in effect before Sec. 602(a)(38), "a family might choose to exclude a child who is receiving social security or child support payments." S.Rep. No. 494, 97th Cong., 2d Sess. 47, reprinted in 1982 U.S.Code Cong. & Admin.News 781, 823. The Secretary reasons that if Congress distinguished between child support payments and social security payments in discussing their inclusion in "income," then Congress arguably distinguished between them for purposes of the income disregard provision.
 
 
 29
 This argument is not without force, see Todd v. Norman, 840 F.2d 608, 611 (8th Cir.1988) (no disregard for social security payments), but we conclude that the suggested inference is simply too tenuous to support the Secretary's interpretation which is not only irrational but also implicates serious equal protection concerns.[4]
 
 
 30
 We perceive no distinction between support derived directly from a father's wages and support provided indirectly through Title II payments. In both cases, it is the father, a wage earner, whether current or past, who provided the support. The money to support the child comes directly through the father or indirectly through insurance he earned when working. In each instance the $50 disregard would serve the purpose the Supreme Court identified in Gilliard, 107 S.Ct. at 3013.
 
 
 31
 In Ledbetter v. Foster, 180 Ga.App. 696, 350 S.E.2d 31, 33 (1986), the only state court decision of which we are aware that has addressed this issue, the court defined the term "child support" in 42 U.S.C. Sec. 602(a)(8)(A)(vi) to include social security payments. A number of other state courts have held that an absent parent's child support obligation is fulfilled by insurance benefits paid by social security on behalf of the parents. See, e.g., Binns v. Maddox, 57 Ala.App. 230, 327 So.2d 726 (1976); Children & Youth Servs. v. Chorgo, 341 Pa.Super. 512, 491 A.2d 1374 (1985); Justice v. Scruggs, 286 S.C. 165, 332 S.E.2d 106 (1985). Moreover, Virginia recognizes Title II benefits as child support by statute. Section 20-61 of the Virginia Code imposes criminal sanctions on absent parents who fail to support their minor children but exempts parents of children who have qualified for and are receiving benefits under a federal aid to the permanently and totally disabled. Va.Code Ann. Sec. 20-61 (Repl.Vol.1983).
 
 
 32
 AFDC families with children who receive social security payments are burdened by the DEFRA amendments no less than families with children who receive payments from noncustodial fathers. No rational basis exists for according one class of families the mitigating benefit of the disregard provision while depriving another arguably indistinguishable class of families of the same benefit. See Todd v. Norman, 840 F.2d at 616 (Lay, C.J., dissenting). This sort of unreasoned distinction raises equal protection concerns. See Clark v. Jeter, --- U.S. ----, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). Interpretation of the statute to include child social security payments within the phrase "child support payments" is fair and reasonable and is in accord with the principle that:
 
 
 33
 Federal statutes are to be so construed as to avoid serious doubt of their constitutionality. "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."
 
 
 34
 International Ass'n of Machinists v. Street, 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141 (1961).
 
 
 35
 We therefore conclude that social security payments are entitled to the $50 disregard under Sec. 602(a)(8)(A)(vi).
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 The amendment in question requires a state plan to:
 provide that in making the determination under paragraph (7) [which sets forth the calculation for eligibility] with respect to a dependent child and applying paragraph (8) [which delineates types of income that are to be disregarded], the State agency shall (except as otherwise provided in this part) include:
 (A) any parent of such child and
 (B) any brother or sister of such child, if such brother or sister meets the conditions described in clause (1) and (2) of section 606(a) [which defines dependent child], if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding Section 204(j) [allowing for payments to representative payees] in the case of benefits provided under Title II);
 42 U.S.C. Sec. 602(a)(38).
 
 
 [2]
 The regulations provide in pertinent part:
 (A) State plan requirements ...
 (1) ...
 (vii) For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:
 (A) ...
 (B) Any blood-related or adoptive brother or sister.
 
 
 [45]
 C.F.R. Sec. 206.10(a)(1)(vii) (1987)
 
 
 [3]
 Gilliard upheld the constitutionality of the DEFRA amendment with respect to payments made by a noncustodial parent. Speaking of the $50 disregard, the Court said:
 Because the 1984 amendments forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced. The burden of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level. (footnotes omitted)
 
 
 [107]
 S.Ct. at 3013
 
 
 [4]
 The parents challenged the Secretary's interpretation on equal protection grounds, but the district court based its decision on statutory construction grounds only. Because we affirm, we find no occasion to decide the constitutional issue