**Golowski v. Shaner**

430

*Levi S. Wolf,* for plaintiff.
*Henry T. Crocker,* for defendant.

KELLER, *J.,* June 26, 2006—The parties are the parents of two daughters, Autumn, who is now emancipated, and Bria, age 15. In July 1978, defendant/Father was injured in a car accident and was in a coma for two weeks. He sustained serious brain injuries requiring extensive rehabilitation. However, defendant was able to work in various manufacturing jobs and then later became a self-employed painter. In the spring of 2002, defendant applied for SSD benefits and on June 25, 2005, filed a petition to modify the parties' then existing 2000 support order. A support conference was held on September 11, 2002, and the parties agreed to the entry of an order that directed defendant to pay $500 monthly for the support of his two children. This agreement and new order resulted in a reduction of $100 per month in support payments.

Between the date he filed for SSD in 2002 and when it was awarded in 2005, defendant earned no income of his own, but fulfilled part of his child support obligation by borrowing money from his father and welfare benefits. Defendant testified that his father loaned him about $95,000 during those three years and approximately $6,000-$7,000 (of a total obligation of about $18,000) was used to pay child support. Father also voluntarily paid $100 in cash towards the costs incurred by Mother and her husband for the children's health insurance. However, there were many months where no support was paid, resulting in defendant's arrearages accumulating.

Petitions for contempt were filed on February 12, 2003 and December 11, 2003. On January 21, 2004, defendant signed "lump-sum SSD attachment order" authorizing his attorney on the SSD claim to attach all funds otherwise payable to the defendant up to the total amount of arrears owing at the time of any such distribution.[1]

On January 21, 2005, Mother petitioned to modify the 2002 order to include the $100 per month for the children's medical expenses. Again, the parties agreed and a modified order was entered on April 29, 2005, increasing defendant's monthly obligation from $500 to $600. This order, entered by agreement, reflects a monthly net income of $0 for defendant/Father. On April 29, 2005, three years after filing for SSD benefits, the Social Security Administration granted defendant/Father's claim, with an effective date retroactive to December 2002. Father was awarded a lump-sum payment of approximately $40,100, in contravention of the lump-sum SSD attachment order signed on January 21, 2004. None of this award was used by defendant to satisfy his arrears, which, as of May 2005, totaled $10,017.35. Additionally, both daughters of plaintiff and defendant received lump-sum SSD payments. Bria, the younger daughter, received $8,255 for the period from December 2002 through July 2005, and an award of $392 per month from August 2005 forward. Autumn, who was emancipated

---

1. The date in the body of the actual order indicates that it was issued on January 21, *2002,* however, in light of the fact that defendant had not even applied for SSD benefits on that date, it appears the date on the order was a typographical error and is read as having been issued on January 21, 2004, as that is the date next to the defendant's signature.

on July 11, 2005, received only a retroactive lump sum payment of $7,863.

On June 8, 2005, the Social Security Administration notified defendant that his then forthcoming monthly benefit would be garnished to pay his support order of $600 per month, with an additional $150 garnished each month as an arrears payment of $75 for each child. On July 26, 2005, defendant petitioned to modify his support order, stating that since the entry of the order, the circumstances have changed substantially as follows "the children are receiving back support from Social Security, which should cover all my arrears so the court order should be terminated." Defendant further requested that the court give credit on the present order.

A support hearing on defendant's petition to modify was held on October 28, 2005 and testimony was taken. The master's report was filed on December 1, 2005. Exceptions were filed by the defendant on December 12, 2005. Support arguments were held before the Honorable Scott D. Keller on April 17, 2006. On April 21, 2006, after argument held and upon consideration of the master's report, and briefs of counsel, this court denied defendant's exceptions. A notice of appeal was filed by the defendant on May 12, 2006. Defendant was ordered to file a concise statement of matters complained of on appeal on May 23, 2006, which the defendant did file on June 6, 2006. The defendant raises the following three issues in his concise statement of matters complained of on appeal:

(I) The trial court erred in its findings that defendant's brain damage and resulting mental disability were not

compelling reasons for retroactive modification for re-
mission of support arrearages under 23 Pa.C.S.
§4352(e).

(II) The trial court erred in denying defendant credit
against support arrearages which accrued during his dis-
ability and for moneys which were paid directly to ap-
pellee in an amount in excess of his support arrearages.

(III) The trial court erred in its determination that
defendant's several agreed upon support modifications
undertaken without counsel during his disability waiting
period and his partial payments with moneys borrowed
should not prejudice or foreclose his ability to request
and/or obtain a retroactive remission of support arrear-
ages.

Defendant's first claim in his concise statement of
matters complained of on appeal alleges that this court
erred in its findings that defendant's brain damage and
resulting mental disability were not compelling reasons
for retroactive modification for remission of support ar-
rearages under 23 Pa.C.S. §4352(e). 23 Pa.C.S. §4352(e)
states:

"*Retroactive modification of arrears.* No court shall
modify or remit any support obligation, on or after the
date it is due, except with respect to any period during
which there is pending a petition for modification. If a
petition for modification was filed modification may be
applied to the period beginning on the date that notice
of such petition was given, either directly or through
appropriate agent, to the obligee or, where the obligee
was the petitioner, to the obligor. However, modification
may be applied to an earlier time period if the petitioner

was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason, and if the petitioner, when no longer precluded, promptly filed a petition. In the case of an emancipated child, arrears shall not accrue from and after the date of emancipation of the child for whose support the payment was made."

The defendant argues that he was unrepresented by counsel, brain damaged and determined to be incapable of gainful employment because of a mental disability, and that these factors qualify as a mental disability or other compelling reasons so as to permit a retroactive modification of arrears under 23 Pa.C.S. §4352(e). However, in her recommendation, the hearing officer found that none of those things rose to the level of "compelling circumstances" contemplated by the rule. We agreed.

Defendant asserted that during the years between 2002 and 2005, he received no income, was unemployed, had a pending Social Security claim, and had suffered brain damage and a mental disability. However, defendant did not assert in his current petition, nor at the hearing held in front of the support master, how his disability precluded him from filing an earlier petition in 2002, 2003 or 2004 to modify based upon these alleged "compelling circumstances." Nor were there any allegations of misrepresentation. The record is clear that the defendant, on several occasions, voluntarily *increased* his support obligation during the three-year period between his application for the SSD benefits and receiving them. This court found that there was not enough compelling reasons presented by the defendant to satisfy his burden of prov-

ing that he was entitled to retroactive modification of the support order and the accompanying arrears.

The second claim raised in defendant's concise statement of matters complained of on appeal alleges that this court erred in denying defendant credit against support arrearages which accrued during his disability and for moneys which were paid directly to appellee in an amount in excess of his support arrearages. The defendant is essentially arguing that he should no longer have to pay support for his children because the lump-sum payments made directly to them should satisfy his arrears, and because Bria, who is unemancipated, continues to receive an ongoing payment due to her father's SSD award. He further asserts that the sum of $8,255 received by the plaintiff for Bria and $7,863 received for Autumn should have extinguished his outstanding support arrearages.

Both the plaintiff and the defendant cite the seminal case of *Children and Youth Services of Allegheny County v. Chorgo,* 341 Pa. Super. 512, 491 A.2d 1374 (1985), in support of their position. The *Chorgo* case was one of first impression for the Pennsylvania courts, and after an in-depth review of similar cases from other jurisdictions considering the same questions, the court found: (1) a credit should *not* be applied to arrearages which accrued before the start of an obligor's disability or retirement; (2) a credit *should* be applied to arrearages which accrued between the date of his application and the commencement of benefits *if the obligor can show that he was financially* unable to make payments during that period; (3) credit *should* be applied to arrearages which accrue after the receipt of benefits by the obligee and which

exist by virtue of those payments not applied to the support obligation; (4) credit should be given on an ongoing monthly basis; and (5) credit should not be given prospectively out of excessive benefits. *Id.* (emphasis added) Defendant concedes that the credit as set forth in the first category should not be applied to support arrearages accumulating before the start of an obligor's disability. However, defendant contends that he was unable to make payments during that period of time since he had no income, no employment, received welfare, and borrowed nearly $95,000 from his father in three years to maintain himself. Defendant believes that the *Chorgo* decision supports his claim that he is entitled to a credit against his child support obligation for Social Security payments made directly to his minor children and that such payments arose out of his entitlement to benefits. However, the hearing officer concluded, "I find that under *Chorgo*, no credit is owed on arrears accrued between June 7, 2002 and the present date because Father has failed to adduce any evidence that he was unable to make his support payments during those years." Recommendation of the custody/support master, 12/01/05.

This court agreed with the hearing officer's interpretation of the law set forth in *Chorgo* and therefore denied the defendant's exceptions to the master's recommendations. We found that the law required the defendant to use his own lump-sum payment from his SSD benefits, and not his children's, to satisfy his arrearage obligation. The court in *Chorgo* stated that it was loath to conclude that excess benefits subsequently received can be applied to retroactively erase arrearages accrued after the start of the disability but before the start of the benefits. It

relied heavily on the case of *McClaskey v. McClaskey,* in which the Missouri Court of Appeals, when faced with a question similar to the present case, reasoned:

"Because a child's need for food, clothing, lodging and other necessary expenses is current—today, this week, this month—and the expectation of a future payment does not meet those needs. To allow the lump-sum payment to be credited against the father's delinquencies, as he urges us to do, could permit him to deliberately create those delinquencies, thereby depriving his children of support, all in the hope that some accrued benefit would cancel his growing default." 543 S.W.2d 832, 835 (Mo.Ct.App. 1976).

However, the *Chorgo* court also recognized that an obligor with a disability legitimately may not be able to satisfy his support obligation through payments. The *Chorgo* court balanced these competing interests by mandating, "In the interest of securing support payment when due, whenever possible, the obligor should go to court with the excuse of inability to pay at the time of that inability. It may be that the failure to do so would result in a waiver." 341 Pa. Super. at 523, 491 A.2d at 1380. This case effectively placed the burden on the obligor to inform the court that he or she is unable to make support payments pending receipt of the disability benefits. We found that the defendant, who filed no petitions to modify the support order from the time he applied for the benefits until after they were awarded, failed to explain why he could not satisfy his support obligation. In fact, the record reflects that the defendant did indeed make some payments in the approximate amount of $6,000-8,000 during the time his disability benefits were

pending, lowering his arrears from around $18,000 to around $10,000 in May 2005.

It is interesting to note that even the petition to modify filed by the defendant in July 2005 does not seek to modify the order based on his inability to pay. Rather, the petition filed by the defendant seeks to absolve him from his three-year-old obligation because his ex-wife received lump-sum payments for the benefit of the children. However, the law is clear that the defendant could only apply the lump-sum payments made to plaintiff for the children to his arrears if he made a showing to the court, at the time his disability began to prevent him from paying, that he could not fulfill his support obligation. The defendant willingly chose to enter an agreement to pay support for his children, whether or not he had the ability or intent to pay, rather than seek to terminate or suspend his obligation because he was unable to meet his obligations while waiting to receive his benefits.

Furthermore, although the issue was wholly ignored in defendant's exceptions and brief, this court cannot overlook the fact that the defendant signed an acknowledgement, which later became an order of this court, that authorized his attorney on the SSD claim "to attach all funds otherwise payable to the defendant up to the total amount of arrears owing at the time of any such distribution." The language of that order unequivocally states that it is the defendant's SSD funds, and not his children's, that were to be used to pay off his arrears when the lump-sum benefits finally arrived. Although the defendant may argue that he did not know what he was signing, the fact is that he voluntarily chose to proceed without counsel. Our Supreme Court has adopted the

position that "any lay person choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Warner v. University of Pennsylvania Health System,* 874 A.2d 644, 648 (Pa. Super. 2005). The plain language of the *Chorgo* case, coupled with the fact that defendant signed an acknowledgement permitting his own lump-sum benefit award to be attached to satisfy his child support arrears, lead this court to conclude that he was not entitled to a credit based upon the lump-sum payments the plaintiff received for the children.

The final claim in defendant/Father's concise statement alleges that this court erred in its determination that defendant's several agreed upon support modifications undertaken without counsel during his disability waiting period and his partial payments with moneys borrowed prejudiced or foreclose his ability to request and/or obtain a retroactive remission of support arrearages. Defendant, from 2002 until 2005, never once asserted to this court that he was unable to satisfy his support obligations. Instead, he agreed to pay support after he filed for SSD benefits and claimed a loss of employment and reduced income. Defendant sought to reduce, rather than terminate, his obligation in 2002, and then entered into an agreement to pay $502 per month. He later informally agreed to raise that amount to $602 and subsequently formally agreed to increase it to $602 in April 2005. Again, the defendant cannot argue that his lack of counsel at the time he entered into the voluntary agreements should permit him to obtain retroactive remission of his support arrearages. A pro se litigant is not absolved from

complying with procedural rules. *Jones v. Rudenstein,* 401 Pa. Super. 400, 404, 585 A.2d 520, 522 (1991). Nor is a pro se litigant entitled to any particular advantage because he lacks legal training. *O'Neill v. Checkers Motor Corp.,* 389 Pa. Super. 430, 434, 567 A.2d 680, 682 (1989). The fact that the defendant made payments from whatever source available, whenever available, instead of following the proper procedure of filing a petition to modify, or suspend or terminate, his support payments based on his inability to pay, does not permit him to obtain retroactive remission of the arrears that accumulated during the period where his disability benefits were pending.

For all of the foregoing reasons, this court respectfully requests that the defendant's appeal be denied and the order denying the defendant's exceptions to the master's recommendations be affirmed.