**Lynn CANTIN v. Douglas YOUNG**

[770 A.2d 449]

No. 99-267

December 28, 2000. Mother Lynn Cantin appeals from the Essex Family Court order granting father Douglas Young a credit for social security disability benefits received by the children against the amount father owes in child support without considering these benefits as income to him. Mother argues that if father is given credit for payments the children receive as a result of his disability, then those payments should be counted as income for purposes of calcu-

lating his child support obligation. We reverse that portion of the family court order that declined to include the disability payments received by the children as income of father.

Young and Cantin were divorced in 1993, and the two children have lived with mother since March 1995. In March 1998, mother moved for a modification of child support in order to include father's workers' compensation benefits as income in determining the guideline amount. The evidence shows that, in addition to those benefits, father receives social security disability benefits under 42 U.S.C. § 401 et seq., and the children receive social security dependency benefits under 42 U.S.C. § 402(d) based on father's disability status. The magistrate granted mother's motion and issued an order on July 2, 1998, directing father to pay child support in the amount of $138.47 per week. Father moved for reconsideration, arguing, inter alia, that he should receive a credit against his child support obligation for disability payments that are received by the children and attributable to him.[1] The magistrate issued a revised order on December 18, 1998, directing that the $400 per month in disability payments received by the two children would serve as a credit towards father's child support obligation of $569.40 per month. Based on this credit, the magistrate set father's amended obligation at $39.10 per week.

The family court affirmed this aspect of the magistrate's decision in May 1999, ruling that under *Davis v. Davis*, 141 Vt. 398, 449 A.2d 947 (1982), the magistrate had the discretion to allow the credit. It characterized this conclusion as a "finding," and stated that such findings would be affirmed absent "clear error." The court rejected the argument that the disability payments received by the children should be counted as income to father, noting that the magistrate had "reasoned that these benefits were a furtherance of the support obligation and were income to the children. . . . These findings and application of law are not clearly erroneous and will not be disturbed."[2] Mother appeals.

Initially, we distinguish *Davis v. Davis*, a pre-guideline case which decided that the court must count social security disability benefits paid to the children in determining father's remaining child support obligation. Here, the benefits are being considered, and the issue involves the method of calculation of the support obligation, an issue not present in *Davis*.

[1] Father also sought reconsideration of the magistrate's decision to impute a twelve-percent annual rate of return on the approximately $100,000 remaining in a lump-sum workers' compensation award that served as a principal source of his income. Reasoning that father could obtain a rate of return between ten and twenty percent if he invested the award in the equity market, the magistrate imputed roughly $1000 per month in income to father based on his earning a twelve-percent rate of return on the award. On reconsideration, the magistrate acknowledged that it had little information upon which to base a determination of imputed interest, but declined to reconsider the twelve-percent rate of return because courts "must look to the environment of greatest return." We find this reasoning highly questionable. In effect, the magistrate's ruling requires father to place his life savings in a high-risk equity account if he hopes to earn the income imputed to him. Father has not appealed the magistrate's ruling, however, and thus we do not disturb it in this appeal.

[2] Following the family court order, the Office of Child Support filed a notice of appeal to this Court. Father sought a dismissal of the appeal on the grounds that OCS was not a party. This Court agreed with father, dismissed the appeal filed by OCS, and granted mother thirty days to file her own notice of appeal. *Cantin v. Young*, 170 Vt. 563, 742 A.2d 1246 (1999).

Contrary to the family court's determination, whether the disability payments received by the children should be included within father's gross income under 15 V.S.A. § 653 is a question of law, reviewed de novo by this Court. *Stickney v. Stickney*, 170 Vt. 547, 548, 742 A.2d 1228, 1231 (1999). Our intent in construing a statutory provision is to discern the intent of the Legislature, *Baker v. State*, 170 Vt. 194, 198, 744 A.2d 864, 868 (1999), and we will look to the whole statutory scheme and the policies behind it where necessary to discern that intent. *State v. Ben-Mont Corp.*, 163 Vt. 53, 57, 652 A.2d 1004, 1007 (1994).

Under § 653(5) gross income means "actual gross income of a parent," and includes:

> income from any source, including, but not limited to, income from salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, *social security benefits*, workers' compensation benefits, unemployment insurance benefits, *disability insurance benefits*, gifts, prizes, and spousal support actually received.

15 V.S.A. § 653(5)(A)(i) (emphasis added). The only explicit exception to the broad coverage of § 653(5)(A)(i) is § 653(5)(B), which sets forth resources not to be included in the above definition: "Gross income shall not include the amount of money received from means tested public assistance programs, including but not limited to, aid to families with dependent children, supplemental income, food stamps, and general assistance."

Although the language of § 653(5)(A)(i) does not explicitly list social security disability payments paid directly to the children of the obligor, the definition does include both social security benefits and disability insurance benefits. We note that the overall structure and meaning of the definition of gross income is expansive, and where the Legislature sought to exclude specific sources of income, it did so in § 653(5)(B), a provision enacted along with the income definition.[3] We agree, however, that the plain language of the income definition does not clearly dictate whether the disability benefits must be treated as income to father because they are paid directly to the children. In the absence of a plain meaning, we look to the legislative history and any express or implied public policy or purpose behind the child support statutes as a whole in order to reach a result consistent with the legislative intent. *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999).

Here, we have a clear statement of legislative purpose in 15 V.S.A. § 650,[4] which provides that "parents have the

---

[3] Section 653 was added to Title 15 during the adjourned session of the 1985 Legislature by Act 180, An Act Relating to Child Support and Maintenance. 1985, No. 180 (Adj. Sess.), § 1. The original definition of gross income enacted by the Legislature contained social security benefits and disability insurance benefits, as does the present version of § 653(5)(A)(i). *Id.* The Act excluded means tested benefits as does § 653(5)(B). *Id.* (originally codified at § 653(5)(E)(ii)).

[4] 15 V.S.A. § 650 was enacted during the same legislative session as was § 653(5). Indeed, both Acts were approved by the Legislature on the same day, Sen. Jour. 926, 931 (May 3, 1986, Vt. Adj. Sess.); see also 1985, No. 180 (Adj. Sess.); 1985, No. 181 (Adj. Sess.), and were approved by the governor on the same day, Sen. Jour. 971 (May 3, 1986, Vt. Adj. Sess.). Furthermore, the conference committees that met concerning conflicting House and Senate versions of the two acts shared several members. See Sen. Jour. 926, 931 (May 3, 1986, Vt. Adj. Sess.). Thus, the expression of public policy contained in § 650 is contemporaneous with the drafting and passage of § 653.

responsibility to provide child support and that child support orders should reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the marriage not been dissolved." If the family were intact, and father were working and not disabled, then his income would be available for the support of the children. Because he is disabled, he receives social security benefits in lieu of wages and so do his children. These benefits are paid as a result of past earnings and contributions to the social security system, like other forms of disability insurance, and the amount of the benefits depends in part on the amount of prior earnings. 42 U.S.C. § 415. If the payments received by the children attributable to father's disability are not calculated as gross income to father, there is "a failure to account for all of the income that would have been available to support the children had the family remained intact." *Jenkins v. Jenkins*, 704 A.2d 231, 235 (Conn. 1998).

In order to ensure that the purposes of the child support statute are realized, the amount of any social security disability payments received directly by the children must first be added to father's income, and then be treated as child support payments to the children, creating a credit against father's child support obligation. As in any case, if either obligor or obligee believes the result is inequitable, he or she may then seek a reduction or increase in the support amount under the factors set out in 15 V.S.A. § 659.

Other courts with similarly expansive definitions of gross income have addressed this same issue and have concluded that social security disability payments received by children, and attributable to the child support obigor, should be counted as income in calculating the child support obligation. *Miller v. Miller*, 890 P.2d 574, 578 (Alaska 1995) (such benefits received by children are essentially earnings derived by obligor from past social security contributions and are counted as income); *Jenkins*, 704 A.2d at 235 (such benefits paid to children are replacement for lost income and are better characterized as income to the obligor than to the children); *Rosenberg v. Merida*, 697 N.E.2d 987, 991 (Mass. 1998) ("fairest approach" treats such benefits as though first paid to obligor then to children in order to satisfy obligation). The same logic that would allow the obligor to claim a credit against his overall child support obligation for payments received directly by the children dictates that these payments be included within the obligor's gross income.

We have already determined in *Davis* that the obligor must be given a credit for disability payments received directly by the children.[5] Although the child support statutory scheme is now different, we decline to revisit that holding. For consistency, we now hold that including the amount of the direct disability payments in the obligor's income best serves the purposes of the child support statutes by more closely approximating the income that would be available if the family unit were intact. Moreover, this approach ensures that the financial burden associated with child rearing is proportioned equitably between the custodial and noncustodial parent based on available income. By excluding the amount of the disability payments received by the children from the calculation of the obligor's gross income, the court improperly skewed the proportionate share of income in favor of father.

*Reversed.*

Motions for reargument and for clarification of mandate denied January 30, 2001.

---

[5] Unless, as we noted in *Davis*, it is clear that the obligation in the support order "be *in addition* to the government benefits." 141 Vt. at 401, 449 A.2d at 949.