2003 VT 75

**Frank H. LAMBERT for the Estate of Jane Charron Lambert and Office of Child Support v. Francis BEEDE**

[830 A.2d 133]

No. 02-452

¶ 1. July 23, 2003. Disabled veteran Francis Beede appeals from an order of the Windsor Family Court denying his motion for driver's license reinstatement

pursuant to 15 V.S.A. § 798(c) due to his failure to make child support payments to the estate of decedent Jane Charron Lambert. He argues that Vermont law does not allow license suspension where the obligor's permanent disability makes repayment unfeasible, and that the trial court erred in basing its decision on Beede's failure to make a good faith effort to pay his support prior to the onset of his disability. We agree that the trial court's application of § 798(c) in this case improperly transforms a measure designed to coerce payment into a punitive device. Accordingly, we reverse.

¶ 2. Beede and Lambert divorced in 1984, assigning Lambert full custody of their two children. Over the next twelve years, Beede paid only $2035 of his total child support obligation. In 1996, Lambert successfully moved for revocation of Beede's driver's license under 15 V.S.A. § 798, which authorizes license removal as a means of providing financially capable noncompliants with additional incentive to make their payments.

¶ 3. In 1997 Beede developed a permanently disabling case of spinal stenosis, which left him financially unable to make his periodic payments. The family court subsequently suspended his current child support obligation, while assessing Beede's debt to the state as $1,278.00 and to Lambert as $29,269.28. In 1998 Beede lived off Supplemental Security Income (SSI) benefits of $604 dollars per month, which increased to $796 per month in November of 2001 when he began receiving Veteran's Administration disability benefits.

¶ 4. Because of his condition and limited income, Beede filed a motion in Windsor Family Court to reinstate his driver's license and to permanently modify his child support payments and outstanding arrearage to zero. In an October 25, 2001 hearing where Beede appeared pro se, the Office of Child Support (OCS) and Lambert waived any right to arrears accruing since 1998, and

OCS waived any remaining right to collect on arrears due to the state. The magistrate then (1) modified Beede's child support obligation to $0 because he lacked the requisite income and both children had reached the age of majority, (2) denied defendant's request to reduce his arrearage, but reduced payments on the arrearage to $0, and (3) denied Beede's motion to reinstate his driver's license.

¶ 5. In addressing the issue of driver's license reinstatement, the magistrate explained that she views a defendant's request in the context of his overall behavior, taking his efforts to pay the support into account. Although noting that Beede now lived only with basic necessities, she found his payment of $2035 in child support during the entire minority of his two children and the accrued arrearages of $29,269.28 dispositive. Because she believed the minimal payments defendant had made over the years did not establish a good faith effort to fulfill his child support obligations, she denied his request for reinstatement.

¶ 6. Beede filed a motion to reconsider, requesting license reinstatement on two grounds. First, Beede argued that because 15 V.S.A. § 798(c) provides for reinstatement when "the parent is in compliance with the underlying child support order," and he complied with his reduced payment order of zero, the magistrate should have reinstated his license. Second, he argued that the inability to make payments toward his outstanding arrearage should provide a defense to continued license suspension, noting that the magistrate's interpretation made it impossible for him to ever regain his license.

¶ 7. The magistrate denied his motion to reconsider, explaining that although inability to pay is relevant to the initial motion for license revocation according to § 798(a), § 798(c) provides no statutory mandate that the court consider the same upon a request for reinstatement. She

also upheld her interpretation of § 798(c)'s reinstatement requirement of "compliance with the underlying child support order" as requiring a good faith effort towards payment not evidenced by Beede's outstanding $29,269.28 arrearage.

¶ 8. On appeal, the Windsor Family Court affirmed the magistrate's earlier decision and subsequent denial of Beede's motion to reconsider under a deferential standard of review. Citing *Garrow v. Garrow*'s instruction that trial court decisions are to be disturbed "'only in the presence of legal error or the absence of factual support for the result,'" 150 Vt. 426, 428, 553 A.2d 569, 571 (1998) (quoting *Romano v. Romano*, 133 Vt. 314, 316, 340 A.2d 63, 64 (1975)), the court determined that the magistrate acted within her discretion in reading the requirement of a good faith effort into § 798(c) and determining that Beede had failed to meet this criterion. Beede appealed.

¶ 9. The issue on appeal here — the interpretation of § 798(c) — is not subject to a deferential standard of review because it is a question of law. See *Cantin v. Young*, 171 Vt. 659, 661, 770 A.2d 449, 451 (2000) (mem.) (question of whether disability payments received by children should be included within father's gross income under 15 V.S.A. § 653 is a question of law and thus subject to de novo review). Thus, whether a disabled individual with an inability to pay can be denied reinstatement of his license under § 798(c) is reviewed under a de novo rather than an abuse of discretion standard.

¶ 10. Beede argues that because he is in compliance with the child support order of $0 and the arrearage repayment order of $0 per month, the magistrate erred in not reinstating his license. We agree. Section 798 of Title 15 governs license suspension and reinstatement. Subsections (a) and (b) provide that when an obligor with a support order fails to pay, and at least one-quarter of the annual support obligation is in arrears, the court may order a license suspension. Inability to pay is a defense to suspension. *Id.* § 798(a). Subsection (c) provides that

> [t]he license shall be reinstated within five days of a reinstatement order from the court or notification from the office of child support or the custodial parent ... that the parent is in compliance with the underlying child support order.

To the extent that subsection (c) imposes any standard for license reinstatement, it is only that the obligor parent be in compliance with the underlying child support order. Logically, however, if inability to pay provides a complete defense to license suspension, no matter how large the arrearage, inability to pay must be relevant to reinstatement. Even though § 798(c) does not explicitly designate the inability to pay as a grounds for license reinstatement, we will "not presume that the legislature intended absurd or irrational consequences." *In re Judy Ann's Inc.*, 143 Vt. 228, 232, 464 A.2d 752, 755 (1983).

¶ 11. Our interpretation is consistent with the legislative scheme for the enforcement of support. Although the payment of child support is a serious obligation, the state enforces payment orders against noncompliants through various civil rather than criminal sanctions. See 15 V.S.A. §§ 603 (authorizing civil contempt orders), 785 (withholding wages), 791 (issuing liens), 793 (affecting credit reports), 795 (revoking licenses or governmental contracts), 796 (holding assets in escrow). To avoid qualifying as punishment, a civil sanction such as license suspension "must be capable of being avoided by defendants through adherence to the court's order." *Sheehan v. Ryea*, 171 Vt. 511, 512, 757 A.2d 467, 468

(2000) (mem.); see also *Russell v. Armitage*, 166 Vt. 392, 399, 687 A.2d 630, 635 (1997) (citing ability to comply as one of three issues requiring consideration in every hearing regarding civil contempt for failure to pay child support).

¶ 12. In contrast to criminal sanctions, civil sanctions aim to compel compliance rather than to punish those in contempt. A court must therefore consider a child support debtor's ability to pay before imposing a civil sanction. *Sheehan*, 171 Vt. at 512-13, 757 A.2d at 468-69 (declaring incarceration an improper sanction for an individual in contempt of child support obligations who does not have the ability to pay these obligations); *Spabile v. Hunt*, 134 Vt. 332, 335-36, 360 A.2d 51, 52-53 (1976) (sanction for noncompliance with child support payments inappropriate where it does not contain any findings as to the husband's ability to meet his court-decreed obligations); *Andrews v. Andrews*, 134 Vt. 47, 49, 349 A.2d 239, 241 (1975) ("Civil contempt can be found where a party, though able, refuses to comply with a valid, specific court order."). We have also required courts to consider ability to comply before ordering sanctions that are less restrictive than incarceration. *Mayo v. Mayo*, 173 Vt. 459, 463-64, 786 A.2d 401, 407 (2001) (mem.) (rejecting modification of a noncompliant's final divorce order as an inappropriate child support enforcement sanction where evidence did not establish financial ability to make support payments). We must therefore administer § 798(c)'s license suspension provisions consistent with our other civil sanctions, recognizing ability to comply as a prerequisite to enforcement.

¶ 13. The purpose of the child support enforcement statutes is to ensure that children enjoy the "standard of living [they] would have enjoyed had the marriage not been dissolved." 15 V.S.A. § 650 (setting out the purpose of all child support provisions and enforcement measures). Here, where an individual is unable to pay due to an income of only $796 per month in disability benefits and his children have reached the age of majority, the statutory purpose can no longer be satisfied. Along with producing little benefit, upholding the decision below would improperly convert § 798 into a punitive measure, as Beede cannot pay his outstanding arrearage of $29,269.28 or regress in time to make the good faith efforts required of him by the magistrate. If Beede should ever receive an inheritance, or should he win the lottery, 33 V.S.A. §§ 3902(e) and 3903 will ensure that these funds go towards settling his arrearage. In the meantime, Vermont law does not allow the state to continue his license suspension under 15 V.S.A. § 798 as a punishment for his past behavior.

*Reversed.*