2011 VT 33

# Jeremiah Louko v. Pamela McDonald

[22 A.3d 433]

No. 10-238

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 18, 2011

*Laura Bierley* and *Thomas F. Garrett, Legal Services Law Line* of Vermont, Burlington, for Plaintiff-Appellee.

*Alicia S. Humbert*, Office of Child Support, Waterbury, for Defendant-Appellant.

¶ 1. **Dooley, J.** The question in this case is whether a retroactive Social Security disability lump-sum benefit payment, paid directly to the children of a worker, may offset a child support arrearage. We hold that it can and affirm.

¶ 2. The relevant facts are not in dispute. The parties were married in 1988 and were divorced on February 7, 2002. Together they have two children, one of whom is emancipated. Mother, Pamela McDonald, was awarded sole legal and physical parental rights and responsibilities for the children in 2001, and father, Jeremiah Louko, was ordered to pay $326 per month in child support beginning on July 11, 2001. Father was incarcerated shortly after the divorce and remained in prison until May 2006.

¶ 3. Since the parties' breakup, there has been continuous litigation over child support. Father did not pay the ordered child support, and an arrearage built up. Once he was released from prison, father began to make motions to modify the child support order based on health issues and the receipt of welfare benefits, and mother and the Office of Child Support (OCS) filed motions to enforce. These motions and orders are background for this appeal; they are not central to it.

¶ 4. The key facts for the appeal relate to father's application for Social Security Disability Insurance (SSDI) benefits in 2006, and the result of this application. The application was initially denied, and he appealed within the Social Security Administration (SSA). Although father filed motions to modify the child support obligation after the date of the SSDI application, none of the motions were based on the existence of the application and proceeding in the SSA.

¶ 5. Eventually, on July 13, 2009, the SSA concluded that father was, in fact, disabled and that the onset of disability occurred on December 31, 2006. On that basis, the SSA awarded retroactive SSDI benefits commencing on June 1, 2007. Pursuant to 42 U.S.C. § 402(d), the SSA also awarded children's benefits to father's children. The award included retroactive children's benefits of between $14,000 and $15,000 to cover the period from June 1, 2007, to the date of the award. The retroactive children's benefits amount was paid to mother on behalf of father's remaining minor child, his other child having become emancipated.

¶ 6. Father had filed a motion to modify child support on February 10, 2009, and the motion was still pending when the notification of the benefit award arrived from SSA. Father notified the court of the award and, among other requests, sought to have the retroactive children's benefits offset his child support arrearage. The magistrate first denied this request but then held that the retroactive children's benefits could be offset against the unsatisfied child support obligation for the period from June 1, 2007 to February 28, 2009. The magistrate explained: "The court does not find this to be a retroactive modification since the court is not changing the monthly obligation under previous orders but only giving credit for what [father] should have paid under those orders that has now been paid by the derivative benefit." OCS and mother appealed to the family court claiming that the credit for the retroactive lump-sum children's award represented a modification of the child support obligation for that period. They argued that the modification violated 15 V.S.A. § 660(e) because it was retroactive prior to the date of the motion. The family court affirmed the magistrate's decision holding that the offset against the arrearage was not a modification of the child support award "because [the magistrate] was not ordering a change in the monthly amount he owes under the previous order." The court noted that if father were not given credit for this lump-sum payment, "the outcome will result in a significant windfall to [mother]." The court also concluded, again affirming the magistrate's decision, that to the extent the children's on-going benefit amount exceeds father's child support obligation, the excess cannot be applied against the arrearage. This appeal followed.

¶ 7. Mother and OCS make the same argument they made to the magistrate and the family court — the offset was a modification of the preexisting child support order and was unlawful to the extent that the modification affected payments due before the date of the motion to modify. The main issue on appeal is a question of law: whether an obligor is entitled to an offset of his child support arrearages based on the amount of a child's dependent benefit for a period prior to the date on which the obligor filed a motion to modify child support. We consider questions of law de novo. *Lambert v. Beede*, 2003 VT 75, ¶ 9, 175 Vt. 610, 830 A.2d 133 (mem.).

¶ 8. Two earlier cases are important background for the issues before us, but do not decide this case. The first case, *Davis*

*v. Davis*, had many of the elements of this case except that it preceded the child support guideline legislation and the procedural history and factual background were different. 141 Vt. 398, 449 A.2d 947 (1982). In *Davis*, after the date on which the obligor began receiving disability benefits and the children began receiving children's benefits, the court issued an order for a monthly child support amount based on a stipulation and acknowledging the receipt of the children's benefits. Noncompliance with this order was before this Court, and the obligor argued that the children's benefits discharged the child-support-payment obligation both prospectively and with respect to any arrearage. We ruled that it did not because the order was intended to require child support in addition to the children's benefits. *Id.* at 401, 449 A.2d at 948. In reaching this result, however, we accepted the reasoning that Social Security children's benefits, paid directly to the obligee on behalf of the children "are, in a sense, a substitute for wages the obligor would have received but for the disability, and from which the court ordered payments would otherwise have been made." *Id.* at 401, 449 A.2d at 949. We added that "the actual *source* of payments is of no concern to the party having custody as long as they are in fact made." *Id.* Our holding was that government benefits paid to the party having custody should be applied toward support obligations "unless the court indicates expressly that the amounts payable under its order are to be *in addition* to the government benefits." *Id.*

¶ 9. The second case, *Cantin v. Young*, 171 Vt. 659, 770 A.2d 449 (2000) (mem.), decided how the rule from *Davis* would work under the child support guidelines, at least with respect to current and future Social Security children's benefits paid to the obligee. The issue in *Cantin* was whether the amount of the children's benefits should be included in the obligor's income for calculating the monthly child support obligation under the guidelines. We ruled that it should be included and summarized the system as follows:

> We have already determined in *Davis* that the obligor must be given a credit for disability payments received directly by the children. Although the child support statutory scheme is now different, we decline to revisit that holding. For consistency, we now hold that including the amount of the direct disability payments in the

> obligor's income best serves the purposes of the child support statutes by more closely approximating the income that would be available if the family unit were intact.

*Id.* at 662, 770 A.2d at 452-53 (footnote omitted).

¶ 10. Under *Cantin,* the court here treated children's benefits as income to father and these benefits were offset against father's child support on a monthly basis following the SSA's award of the benefits. Since the children's benefits amount exceeded the amount of the monthly child support obligation, the payment amount was reduced to $0, and there is no debate about that. Similarly, mother and OCS do not challenge the offset of the retroactive children's benefits against the child support arrearage amount for the short period between the date of the filing of the motion to modify and the date of the award of the benefits, although they characterize the offset order as modifying father's child support obligation for that period.

¶ 11. The issue of whether credit should be allowed for arrearages that accumulated prior to the commencement of a modification proceeding has not been decided by this Court. Mother and OCS claim that allowing such a credit would result in a de facto modification of the child support order prior to the date of filing, which is contrary to 15 V.S.A. § 660(e)[1] and 42 U.S.C. § 666(a)(9).[2] Father argues that instead of being characterized as a modification, allowing the credit should be viewed as permitting payment of arrears from an alternative source, something which Vermont courts have routinely allowed under a number of statutes. See, e.g., 15 V.S.A. § 792 (allowing attachment of lottery winnings); *id.* § 796 (allowing attachment of liquid assets).

■ ¶ 12. We conclude that father has the more persuasive side of this argument. As the family court noted, the underlying child

---

[1] Vermont's child support modification statute allows a support order to be modified "only as to future support installments and installments which accrued subsequent to the date of notice of the motion to the other party or parties." 15 V.S.A. § 660(e).

[2] Federal law states that procedures for payment under any child support order are "not subject to retroactive modification by such State or by any other State; except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or . . . to the obligor." 42 U.S.C. § 666(a)(9).

support order was not modified; the court's decision held that the directly paid children's benefits constituted payment of the ordered child support amount for the period covered by the benefits. The payment was a wage replacement benefit to support the child. See *Weaks v. Weaks*, 821 S.W.2d 503, 506 (Mo. 1991) (noting Social Security benefits are replacement for income); *Davis*, 141 Vt. at 401, 449 A.2d at 948. Unless the benefit is credited to the child support arrearage, mother will receive a windfall and the possibility of double payment. The applicable statutes do not address the question of what constitutes payment.

¶ 13. In adopting this position, we join the majority of courts that have addressed the issue. See, e.g., *Pacana v. State*, 941 P.2d 1263, 1265 (Alaska 1997) (ruling for father where he argued "in favor of the majority rule, which is that [children's benefits] payments made prior to a motion to modify are credited against child support obligations"); *In re Marriage of Henry*, 622 N.E.2d 803, 806 (Ill. 1993) ("[T]he overwhelming majority of jurisdictions have held that payment of a social security dependent disability allowance paid on behalf of a noncustodial parent satisfied such parent's child support obligation."); *Board v. Board*, 690 S.W.2d 380, 381 (Ky. 1985) ("There is a distinction between crediting an obligation with payment made from another source and increasing, decreasing or terminating, or otherwise modifying a specific dollar amount."); *Weaks*, 821 S.W.2d at 506 (rejecting rule in minority of states "that a credit for social security disability payment is available against the child support obligation only *after* a modification by the trial court"); *In re Marriage of Cowan*, 928 P.2d 214, 220 (Mont. 1996) (crediting Social Security benefits paid to children because change in source of payment did not amount to "a retroactive modification of the . . . original child support order"); *Pontbriand v. Pontbriand*, 622 A.2d 482, 486 (R.I. 1993) (recognizing that Social Security benefits paid to child were not a modification of child support order); *Settle v. Settle*, 540 S.E.2d 178, 182 (W. Va. 2000) (concluding that "the lower court abused its discretion in limiting the retroactive application of the credit for the Social Security dependent's benefits paid to the date the motion for modification was filed" and allowing appellant to "receive full credit" for SSA payments). A minority of jurisdictions have taken the opposite position and concluded that a parent may not receive credit for lump-sum Social Security benefits paid to a child when the benefits cover a period before the parent filed a

motion to modify his or her support obligation. See, e.g., *Brown v. Brown*, 849 N.E.2d 610, 615 (Ind. 2006) (holding that "lump-sum payments of retroactive Social Security disability benefits to children cannot be credited against child support arrearages that are accumulated before the noncustodial parent has filed a petition to modify based on the disability"); *Jenerou v. Jenerou*, 503 N.W.2d 744, 745 (Mich. Ct. App. 1993) ("[Father] filed a petition for modification of the support order in 1987, but abandoned his claim before the trial court rendered a decision. Because no petition for modification of the order is pending, retroactive modification of the order is not possible.").

¶ 14. The minority rule appears to be based primarily on the policy of discouraging cessation of child support payments on submission of a SSDI application rather than on a fair definition of what is a modification. See *Brown*, 849 N.E.2d at 615 (" 'Enforcement of the [modification] rule eliminates the disincentive which obligors would otherwise have to suspend their support payments pending application for disability benefits.' " (quoting *Newman v. Newman*, 451 N.W.2d 843, 844 (Iowa 1990))). There are significant difficulties in applying the minority rule. In order to obtain a credit under the minority rule, the obligor must file a motion to modify the child support order on the day that the obligor applies for Social Security benefits. *Id.* There may be no changed circumstances on that day, however. See 15 V.S.A. § 660(a) (motion to modify requires a showing of "real, substantial and unanticipated change of circumstances"). Meanwhile, the court cannot act on the motion until the SSA acts, which can take years, as this case demonstrates. Further, the obligor has the same incentive to discontinue child support payments as the obligor would have if no motion had been filed. As the Supreme Court of Missouri observed in *Weaks*, the extra step of filing an early motion to modify "wastes time and money and helps no one." 821 S.W.2d at 507.

¶ 15. OCS and mother argue that crediting the child's SSDI benefits to past-due child support is necessarily a modification under *Cantin v. Young* because the benefits are income to father. On this point, we agree with the reasoning of the Supreme Court of Alaska in *Pacana*. *Cantin* requires a modification of the *current* child support order to reflect father's income both from his SSDI benefits and from the direct payment to the child, and this modification already occurred in this case. But the modification

pertaining to *current* payments does not transform the crediting of *retroactive*, direct children's benefits into a *retroactive* modification of the child support order. See *Pacana*, 941 P.2d at 1266 (recognizing that holding that father can receive credit against child support arrearage for children's benefits does not conflict with prior ruling regarding prospective recalculation of child support order).

■ ¶ 16. We conclude that in this case allowing father to credit the lump-sum SSDI payment towards his child support arrearages during the time of his disability does not retroactively modify his child support obligation. Instead, we hold such a credit results "merely [in] a change in the identity of the payer." *Weaks*, 821 S.W.2d at 507. The benefit that mother received on behalf of parties' children was a substitute for father's income during the time he was disabled and therefore should be credited to satisfy his child support arrearages during that period. See *id.*

¶ 17. In addition to their claim that allowing a credit against support arrearages would result in a de facto modification of the child support order, mother and OCS argue that the magistrate committed legal error by ordering that father's arrears be credited because this reopened several prior support judgments. The three judgments that mother and OCS point to, however, were all issued before the date on which the SSA found father eligible for SSDI benefits and prior to the date on which a lump-sum dependent benefit was awarded. As we discuss above, the decision to allow father a credit towards his child support arrearages for the lump-sum payment made on behalf of the child does not modify earlier support judgments — it merely results in a change in the identity of the payor of those benefits. Therefore, we hold that neither the magistrate nor the family court committed legal error by ordering that the children's dependent benefits be credited against the child support arrearage for the period of the benefits.

*Affirmed.*