2015 VT 73

## Lori Rathbone v. Curtis Corse

[124 A.3d 476]

No. 14-104

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed May 22, 2015

*Laura C. Bierley* and *Thomas F. Garrett, Legal Services Law Line of Vermont, Inc.*, Burlington, for Plaintiff-Appellant.

*Curtis Corse*, Pro Se, St. Albans, Defendant-Appellee.

¶ 1. **Reiber, C.J.** This case comes to us as an appeal from a family court judge's review of a magistrate's order that required

mother to reimburse father for an overpayment of his child-support obligations. In a September 2013 order that disposed of father's motion to modify his child-support obligation, the magistrate found that father paid child support while mother also received a social security disability insurance (SSDI) derivative benefit on behalf of the parties' child through father's own SSDI benefit. The magistrate cited our decision in *Louko v. McDonald* for the proposition that father could credit the derivative benefit against his child-support obligation. 2011 VT 33, ¶ 16, 189 Vt. 426, 22 A.3d 433. The family court judge affirmed the magistrate's order, also citing *Louko*. Because we conclude that the underlying principle in *Louko* should extend to the facts of this case, we affirm the decision of the family court judge.

¶ 2. The parties were never married and have one daughter together, who was born on December 22, 2002. The Superior Court, Washington Unit, Family Division assigned sole parental rights and responsibilities to mother in 2006. At the same time, the court held a hearing on child support, at which mother appeared but father failed to appear. The magistrate who presided over that hearing issued a temporary child-support order requiring father to pay mother $10 per week starting in March 2006.

¶ 3. On January 2, 2007, the family court magistrate presided over another hearing to review child support, which mother attended but father again did not. The magistrate issued a default child-support order requiring father to pay $271.00 per month, retroactively effective as of November 1, 2006. The magistrate also determined that father owed an arrearage of $578.64 to the Office of Child Support (OCS) and ordered him to make payments of $25.00 per month. The magistrate ordered that the child-support and arrearage payments be made through wage withholding, with $296.00 being withheld each month.

¶ 4. On December 31, 2009, OCS moved to enforce the 2007 default order, alleging that father had failed to make child-support payments since January 29, 2009. The magistrate held another hearing on February 2, 2010. Father once more did not appear, but mother did. The same day, the magistrate issued an enforcement order that required father to continue paying $271.00 per month in child support and $25.00 per month towards the arrearages he owed to both mother and OCS. Under that order, total payments from father in the amount of $296.00 per month would be made through wage withholding.

¶ 5. Three years later, on March 21, 2013, father filed a motion to modify the February 2010 order on the ground that he was disabled and the parties' daughter had been receiving a derivative benefit from his own SSDI benefits. The family court held a hearing on July 9, 2013, at which mother appeared in person and father appeared by phone.

¶ 6. On September 3, 2013, the magistrate issued her findings, conclusions, and orders. The magistrate's undisputed findings follow. The daughter's derivative benefits through father's SSDI benefits began in May 2009. After he became disabled, father continued to pay child support. At the time of the July 2013 hearing, father's child-support obligation was $271.00 per month, but after the new child-support-guideline calculations father's obligation would be $109.00 per month. In 2009, the amount of the derivative benefit that the parties' daughter was receiving through father's SSDI benefit was $272.00 per month. As of September 2013, the amount of the derivative benefit had increased to $287.00 per month. The parties agreed that beginning April 1, 2013, the derivative benefit would take the place of any cash payment of child support from father to mother.

¶ 7. With respect to the past child-support payments made by father, the magistrate concluded that father was entitled to a credit of $271.00 per month for each month that the parties' daughter received the derivative benefit prior to father's March 2013 motion to modify.[1] Father agreed that he would seek repayment of only half the credit that was owed to him. The magistrate calculated the total credit to be $14,183.93. After dividing that amount in half, the magistrate concluded that father should be credited for a $7,091.97 overpayment. The magistrate

---

[1] Page 5A of the magistrate's September 2013 order indicates that father is entitled to a credit of $271.00 per month, but the magistrate's calculations on page 5B incorrectly lists the credit as $217.00 per month. $271.00 is the correct monthly amount. The January 2007 and February 2010 orders confirm that father's child support obligation was $271.00 per month during the relevant time period. Moreover, the magistrate determined that the monthly rate should be applied to a forty-six-month period between May 2009 and March 2013; the magistrate determined that father's total credit for that period is $12,466.00, which is consistent with the correct figure. It is the product of multiplying forty-six months by $271.00 per month, not $217.00 per month. Two other clerical errors on the lines below listing the payments for April and May "2103" instead of "2013" suggest that "$217" is similarly the result of transposing "1" and "7" in "$271."

ordered mother to repay father $100.00 per month upon becoming employed.

¶ 8. Mother appealed the magistrate's September 2013 order to a family court judge on the issue of whether the magistrate erred in ordering her to reimburse father for the child-support payments he made while she was receiving the SSDI derivative benefit on behalf of the parties' daughter. The judge affirmed the order, reasoning that mother would receive a double payment if she were allowed to keep both the SSDI derivative-benefit payment and the payments from father through the wage-withholding order. This appeal followed.

¶ 9. Whether mother must reimburse father for payments during the period when she received the SSDI derivative benefit on behalf of the parties' daughter is a question of law, our review of which is nondeferential and plenary. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438-39, 736 A.2d 780, 783 (1999).

¶ 10. ■ Mother argues on appeal that the magistrate's order to reimburse father is a retroactive modification of a child-support order that is prohibited under both Vermont and federal statute. See 42 U.S.C. § 666(a)(9)(C) (providing that child support orders shall not be subject to retroactive modification except "with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given"); 15 V.S.A. § 660(e) ("An order may be modified only as to future support installments and installments which accrued subsequent to the date of notice of the motion to the other party or parties."). Our precedent militates against this conclusion. We have previously decided that crediting SSDI derivative benefits against past child-support obligations — applying the credit retroactively — is not the same as retroactively modifying them.

¶ 11. In their decisions, both the magistrate and the family court judge cited our conclusion in *Louko v. McDonald* that crediting a lump-sum payment of SSDI benefits against child-support arrearages was not a retroactive modification. 2011 VT 33, ¶ 16. In that case, the parties' divorce led to a long-running dispute over child support. The court ordered the noncustodial father to pay child support beginning in July 2001, but the father was incarcerated from 2002 until 2006. He did not pay the ordered child support; an arrearage accumulated. In 2006, the

father applied for SSDI benefits. In 2009, the Social Security Administration (SSA) determined that the father was disabled and awarded him retroactive benefits that commenced at the end of 2006. The SSA also awarded a retroactive derivative benefit to his minor child. The father filed a motion to modify child support that was still pending when the SSA notified him of its award of SSDI benefits to him and his children. The father requested that the retroactive derivative benefit offset his arrearage. The magistrate eventually granted this request, reasoning that the offset is not "a retroactive modification since the court is not changing the monthly obligation under the previous orders but only giving credit for what [the] father should have paid under those orders that has now been paid by the derivative benefit." *Id.* ¶ 6 (quotation omitted). Reviewing the magistrate's decision on appeal, the family court judge agreed, noting that without the credit, the mother would receive a windfall. *Id.* On appeal to this Court, the father argued that crediting the derivative benefit "should be viewed as permitting payment of arrears from an alternative source, something which Vermont courts have routinely allowed under a number of statutes." *Id.* ¶ 11. We affirmed the decision to offset the derivative benefits, concluding that "such a credit results 'merely [in] a change in the identity of the payer.'" *Id.* ¶ 16 (quoting *Weaks v. Weaks*, 821 S.W.2d 503, 507 (Mo. 1991)).

¶ 12. ▉ Two previous decisions provided the background for our decision in *Louko*, *Davis v. Davis*, 141 Vt. 398, 449 A.2d 947 (1982), and *Cantin v. Young*, 171 Vt. 659, 770 A.2d 449 (2000) (mem.). In *Davis*, we agreed that "equity and fairness demand that consideration be given to government child support benefits paid to the party having custody." 141 Vt. at 401, 449 A.2d at 948. Accordingly, in *Louko*, we quoted *Davis* for the proposition that SSDI derivative benefits "paid directly to the obligee on behalf of the children are, in a sense, a substitute for wages the obligor would have received but for the disability, and from which the court ordered payments would otherwise have been made." *Louko*, 2011 VT 33, ¶ 8 (quotation omitted).[2]

---

[2] We also held in *Davis* and reaffirmed in *Cantin* that the obligor will not receive a credit for directly-paid derivative benefits if "the court indicates expressly that the amounts payable under its order are to be *in addition* to the government benefits." *Davis*, 141 Vt. at 401, 449 A.2d at 949. See also *Cantin*, 171 Vt. at 662

¶ 13. ■ Our decision in *Cantin* decided how *Davis*'s reasoning would work under the child-support guidelines that were enacted after we decided the earlier case. *Louko*, 2011 VT 33, ¶ 9 (discussing *Cantin*). In *Cantin*, we held that "including the amount of the direct disability payments in the obligor's income best serves the purposes of the child support statutes by more closely approximating the income that would be available if the family unit were intact." 171 Vt. at 662, 770 A.2d at 453. We developed a rule for including SSDI benefit payments in calculating the amount an obligor must pay directly:

> In order to ensure that the purposes of the child support statute are realized, the amount of any social security disability payments received directly by the children must first be added to [an obligor's] income, and then be treated as child support payments to the children, creating a credit against [the obligor's] child support obligation.

*Id.* at 662, 770 A.2d at 452.

¶ 14. ■ *Davis* and *Cantin* were not directly dispositive in *Louko* because they determined the prospective effect that SSDI derivative benefits would have on an obligor's future obligations rather than how the payment of a retroactive SSDI benefit would affect child-support obligations that were due in the past. The two earlier cases did, however, provide the foundation for our conclusion in *Louko* that SSDI derivative benefits paid directly to an obligee can satisfy child-support arrears that the obligor has incurred. The underlying principle in *Louko* is that an SSDI derivative benefit may satisfy a parent's prior child-support obligation without retroactively modifying the child-support order. Because the identity of the payer changes — and the amount that the order required the obligor to pay does not — applying the credit retroactively is not a retroactive modification.[3]

¶ 15. ■ In *Louko*, we affirmed a holding that SSDI derivative benefits "constituted payment of the ordered child support amount

n.5, 770 A.2d at 452-53 n.5. As there is no such language in the underlying child-support order in this case, the issue does not arise.

[3] The majority of states share the view that crediting derivative-benefit payments against child-support obligations does not modify a child-support order. See *Louko*, 2011 VT 33, ¶ 13 (listing cases).

for the period covered by the benefits." 2011 VT 33, ¶ 12. Following this principle, retroactively crediting SSDI derivative benefits against a prior child-support obligation effectively renders any payments directly from an obligor during the creditable period into overpayments, provided that the amount of the credit fully satisfies the obligation. In other words, rather than retroactively modifying father's child-support obligation, the magistrate determined that past payments made through wage-withholding were overpayments during the period that the SSDI derivative benefit applied. Under this view, the repayment order is for the payments directly from father's wages that were withheld during his disability rather than for the SSDI-derivative-benefit payments from the SSA. The manner in which the magistrate has ordered mother to make the repayment — paying $100.00 per month only after she finds employment — as well as the limits on a state judge's ability to order the disposition of federal benefits further support this view.

¶ 16. ▮ The fundamental link between this case and *Louko* is the offset of retroactive SSDI-derivative-benefit payments against prior child-support obligations during the period covered by those derivative benefit payments. In *Louko*, those obligations were not met as they came due, whereas in this case father satisfied his obligations in a timely manner through wage withholding — he seeks reimbursement for payments he made rather than a credit against an arrearage. Despite that difference, the principle underlying *Louko* guides our reasoning. Here, as in *Louko*, the amount of father's obligation under the child-support order has not changed; this fact supports the conclusion that the child-support order has not been retroactively modified by the repayment order. Under the principle we recognized in *Louko*, father would be entitled to credit the SSDI derivative benefit mother received on behalf of the parties' child against his prior child-support obligation. Furthermore, the amount of the SSDI derivative benefit exceeded father's child-support obligation, so the payment of the derivative benefit fully satisfied his obligation during the period for which the credit applied. Thus, where father also concurrently paid mother through wage withholding, mother received a double payment during that period. See *id.* (discussing how failure to credit SSDI derivative benefit would lead to obligee receiving "a windfall and the possibility of double payment"). The conclusion that father is entitled to reimbursement for the overpayment does

expand our holding in *Louko*, but not to an unreasonable extent. Cf. *LaMothe v. LeBlanc*, 2013 VT 21, ¶¶ 38-40, 193 Vt. 399, 70 A.3d 977 (applying rationale in *Louko* to child-support obligations between parties with shared custody of child).

¶ 17. ▮ In concluding that father is entitled to a reimbursement for the overpayment, we reject mother's contention that the entirety of the SSDI derivative benefit should be treated as a gratuity. We recognize that where an SSDI derivative benefit exceeds the amount of a child-support obligation, the difference between the two should be considered as a gratuity for the child. *Id.* ¶ 28 (citing *Keith v. Purvis*, 2007-CA-00495-COA (¶ 12), 982 So. 2d 1033 (Miss. Ct. App. 2008)). Thus, under the current order, the $178.00 from the $287.00-per-month SSDI derivative benefit that is in excess of father's $109.00-per-month obligation should be treated as a gratuity to the parties' child. Vermont courts may not rule otherwise. *Id.* ¶ 22 (acknowledging that "the Vermont courts do not have the authority to order the SSA to divert a portion of the derivative benefit" to parent receiving SSDI benefit where derivative benefit exceeds that parent's obligation); see also *id.* ¶¶ 63-65 (Dooley, J., dissenting) (discussing "serious legal obligations" imposed by federal law on parent receiving SSDI derivative benefits on behalf of beneficiary child). Our rationale in *Louko* that applying credit for SSDI derivative benefits "merely results in a change in the identity of the pay[e]r" does not support treating the full amount of an SSDI derivative benefit as a gratuity. *Louko*, 2011 VT 33, ¶ 17.

¶ 18. We agree with the family court judge's conclusion that a sound policy would encourage obligor parents to make ongoing, regular payments during the pendency of an SSDI application. As we recognized in *Louko*, years can elapse between an initial application for an SSDI benefit and the payment of the benefit. *Id.* ¶ 14. We accept the family court's observation that, as our law currently stands under *Louko*, "an obligor shirking his or her duty to pay would have every incentive to stop support payments during the pendency of their SSDI application in the hopes that an eventual lump-sum payment might defray the accumulating arrearage." The policy of the child-support statute is not served by discouraging an obligor parent from making ongoing payments while waiting — possibly for years — for an SSDI benefit to be credited against an arrearage that accrues between the initial

application for the benefit and its award.[4] See 15 V.S.A. § 650 (declaring as policy "that parents have the responsibility to provide child support, and that child support orders should . . . approximate insofar as possible the standard of living the child would have enjoyed had the family remained intact").

¶ 19. Allowing reimbursement for payments during the pendency of an application would encourage obligor parents to continue support payments as they await the outcome of their SSDI applications. Reimbursement assures obligors that they will recover child-support payments that are determined to be overpayments if credit for a retroactive SSDI derivative benefit is applied at some point in the future. In the meantime, the child's needs are met through ongoing payments of the child-support order directly from the obligor. The availability of reimbursement for these payments denies a shirking obligor the ability to use tomorrow's retroactive credit as a justification for not meeting today's obligations.

*Affirmed.*

---

[4] It appears that father did not file his motion to modify as soon as he became aware of the excess child-support payment, which has exacerbated the challenge here. If he had filed sooner, the amount mother would have had to repay — over $7,000 even after father's agreement to seek only 50% of the total amount — might have been much less. On appeal, mother argues that the overpayment should be treated as a gratuity — an argument we reject for the reasons noted above. Under the circumstances of this case, we do not reach the question of whether father's delay in filing his motion to modify amounted to laches or a waiver of some sort.