2015 VT 73











Rathbone v. Corse (2014-104)

 

2015 VT 73

 

[Filed 22-May-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports.  Readers
are requested to notify the Reporter of Decisions by email at:
JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State
Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections
may be made before this opinion goes to press.

 

 


 
 
 2015 VT 73
 
 


 


 
 
 No. 2014-104
 
 


 


 
 
 Lori Rathbone
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Washington Unit,
 
 
 
 
  
 
 
 Family Division
 
 
 
 
  
 
 
  
 
 
 
 
 Curtis Corse
 
 
 November Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Thomas
 J. Devine, J.
 
 
 
 
  
 
 


Laura C. Bierley and Thomas F.
Garrett, Legal Services Law Line of Vermont, Inc., Burlington,

  for
Plaintiff-Appellant.

 

Curtis Corse, Pro Se, St. Albans,
Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Robinson and Eaton, JJ.

 

 

¶ 1.            
REIBER, C.J.   This case comes to us as an appeal from
a family court judge’s review of a magistrate’s order that required mother to
reimburse father for an overpayment of his child-support obligations.  In
a September 2013 order that disposed of father’s motion to modify his
child-support obligation, the magistrate found that father paid child support
while mother also received a social security disability insurance (SSDI)
derivative benefit on behalf of the parties’ child through father’s own SSDI
benefit.  The magistrate cited our decision in Louko
v. McDonald for the proposition that father could credit the derivative
benefit against his child-support obligation.  2011 VT
33, ¶ 16, 189 Vt. 426, 22 A.3d 433.  The family
court judge affirmed the magistrate’s order, also citing Louko. 
Because we conclude that the underlying principle in Louko
should extend to the facts of this case, we affirm the decision of the family
court judge.

¶ 2.            
The parties were never married and have one daughter together, who was
born on December 22, 2002.  The Superior Court,
Washington Unit, Family Division assigned sole parental rights and
responsibilities to mother in 2006.  At the same time, the court
held a hearing on child support, at which mother appeared but father failed to
appear.  The magistrate who presided over that hearing issued a temporary
child-support order requiring father to pay mother $10 per week starting in
March 2006.  

¶ 3.            
On January 2, 2007, the family court magistrate presided over another
hearing to review child support, which mother attended but father again did
not.  The magistrate issued a default child-support order requiring father
to pay $271.00 per month, retroactively effective as of November 1, 2006. 
The magistrate also determined that father owed an arrearage of $578.64 to the
Office of Child Support (OCS) and ordered him to make payments of $25.00 per
month.  The magistrate ordered that the child-support and arrearage payments
be made through wage withholding, with $296.00 being withheld each month. 


¶ 4.            
On December 31, 2009, OCS moved to enforce the 2007 default order,
alleging that father had failed to make child-support payments since January
29, 2009.  The magistrate held another hearing on February 2, 2010. 
Father once more did not appear, but mother did.  The same day, the
magistrate issued an enforcement order that required father to continue paying
$271.00 per month in child support and $25.00 per month towards the arrearages
he owed to both mother and OCS.  Under that order, total payments from
father in the amount of $296.00 per month would be made through wage
withholding.

¶ 5.            
Three years later, on March 21, 2013, father filed a motion to modify
the February 2010 order on the ground that he was disabled and the parties’
daughter had been receiving a derivative benefit from his own SSDI
benefits.  The family court held a hearing on July 9, 2013, at which
mother appeared in person and father appeared by phone.

¶ 6.            
On September 3, 2013, the magistrate issued her findings, conclusions,
and orders.  The magistrate’s undisputed findings follow.  The
daughter’s derivative benefits through father’s SSDI benefits began in May
2009.  After he became disabled, father continued to pay child support.
 At the time of the July 2013 hearing, father’s child-support obligation
was $271.00 per month, but after the new child-support-guideline calculations
father’s obligation would be $109.00 per month.  In 2009, the amount of
the derivative benefit that the parties’ daughter was receiving through
father’s SSDI benefit was $272.00 per month.  As of September 2013, the
amount of the derivative benefit had increased to $287.00 per month.  The
parties agreed that beginning April 1, 2013, the derivative benefit would take
the place of any cash payment of child support from father to mother.  

¶ 7.            
With respect to the past child-support payments made by father, the
magistrate concluded that father was entitled to a credit of $271.00 per month
for each month that the parties’ daughter received the derivative benefit prior
to father’s March 2013 motion to modify.[1] 
Father agreed that he would seek repayment of only half the credit that was
owed to him.  The magistrate calculated the total credit to be $14,183.93.
 After dividing that amount in half, the magistrate concluded that father
should be credited for a $7,091.97 overpayment.  The magistrate ordered
mother to repay father $100.00 per month upon becoming employed.

¶ 8.            
Mother appealed the magistrate’s September 2013 order to a family court
judge on the issue of whether the magistrate erred in ordering her to reimburse
father for the child-support payments he made while she was receiving the SSDI
derivative benefit on behalf of the parties’ daughter.  The judge affirmed
the order, reasoning that mother would receive a double payment if she were
allowed to keep both the SSDI derivative-benefit payment and the payments from
father through the wage-withholding order.  This appeal followed.

¶ 9.            
Whether mother must reimburse father for payments during the period when
she received the SSDI derivative benefit on behalf of the parties’ daughter is
a question of law, our review of which is non-deferential and plenary.  N.A.S. Holdings, Inc. v. Pafundi,
169 Vt. 437, 438-39, 736 A.2d 780, 783 (1999).

¶ 10.         Mother
argues on appeal that the magistrate’s order to reimburse father is a retroactive
modification of a child-support order that is prohibited under both Vermont and
federal statute.  See 42 U.S.C. § 666(a)(9)(c) (providing that child
support orders shall not be subject to retroactive modification except “with
respect to any period during which there is pending a petition for
modification, but only from the date that notice of such petition has been
given”); 15 V.S.A. § 660(e) (“An order may be modified only as to
future support installments and installments which accrued subsequent to the
date of notice of the motion to the other party or parties.”).  Our
precedent militates against this conclusion.  We have previously decided
that crediting SSDI derivative benefits against past child-support
obligations—applying the credit retroactively—is not the same as retroactively
modifying them.

¶ 11.         In
their decisions, both the magistrate and the family court judge cited our
conclusion in Louko v. McDonald that
crediting a lump-sum payment of SSDI benefits against child-support arrearages
was not a retroactive modification.  2011 VT 33,
¶ 16.  In that case, the parties’ divorce led to a
long-running dispute over child support.  The court ordered the
non-custodial father to pay child support beginning in July 2001, but the
father was incarcerated from 2002 until 2006.  He did not pay the ordered
child support; an arrearage accumulated.  In 2006, the father applied for
SSDI benefits.  In 2009, the Social Security Administration (SSA)
determined that the father was disabled and awarded him retroactive benefits
that commenced at the end of 2006.  The SSA also awarded a retroactive
derivative benefit to his minor child.  The father filed a motion to
modify child support that was still pending when the SSA notified him of its award
of SSDI benefits to him and his children.  The father requested that the
retroactive derivative benefit offset his arrearage.  The magistrate
eventually granted this request, reasoning that the offset is not “a
retroactive modification since the court is not changing the monthly obligation
under the previous orders but only giving credit for what [the father] should
have paid under those orders that has now been paid by the derivative
benefit.”  Id. ¶ 6 (quotation omitted). 
Reviewing the magistrate’s decision on appeal, the family court judge agreed,
noting that without the credit, the mother would receive a windfall.  Id. 
On appeal to this court, the father argued that crediting the derivative
benefit “should be viewed as permitting payment of arrears from an alternative
source, something which Vermont courts have routinely allowed under a number of
statutes.”  Id. ¶ 11.  We affirmed
the decision to offset the derivative benefits, concluding that “such a credit
results ‘merely [in] a change in the identity of the payer.’ ”  Id. ¶ 16 (quoting Weaks v. Weaks, 821
S.W.2d 503, 507 (Mo. 1991)).

¶ 12.         Two
previous decisions provided the background for our decision in Louko, Davis v. Davis, 141 Vt. 398, 449 A.2d
947 (1982), and Cantin v. Young, 171
Vt. 659, 770 A.2d 449 (2000) (mem.).  In Davis, we agreed that
“equity and fairness demand that consideration be given to government child
support benefits paid to the party having custody.”  141 Vt. at 401, 449 A.2d at 948.  Accordingly, in Louko,
we quoted Davis for the proposition that SSDI derivative benefits “paid
directly to the obligee on behalf of the children
are, in a sense, a substitute for wages the obligor would have received but for
the disability, and from which the court ordered payments would otherwise have
been made.”  Louko, 2011 VT 33, ¶ 8 (quotation omitted).[2]

¶ 13.         Our
decision in Cantin decided how Davis’s
reasoning would work under the child-support guidelines that were enacted after
we decided the earlier case.  Louko, 2011 VT 33, ¶ 9 (discussing Cantin). 
In Cantin, we held that “including the amount
of the direct disability payments in the obligor’s income best serves the
purposes of the child-support statutes by more closely approximating the income
that would be available if the family unit were intact.”  171 Vt. at 662, 770 A.2d at 453.  We developed a rule for including
SSDI benefit payments in calculating the amount an obligor must pay directly:

  In order to ensure that the purposes
of the child support statute are realized, the amount of any social security
disability payments received directly by the children must first be added to
[an obligor’s] income, and then be treated as child support payments to the
children, creating a credit against [the obligor’s] child support obligation.

Cantin,
171 Vt. at 662, 770 A.2d at 452.

¶ 14.         Davis
and Cantin were not directly dispositive in Louko because they determined the prospective effect
that SSDI derivative benefits would have on an obligor’s future obligations
rather than how the payment of a retroactive SSDI benefit would affect
child-support obligations that were due in the past.  The two earlier
cases did, however, provide the foundation for our conclusion in Louko that SSDI derivative benefits paid directly to
an obligee can satisfy child-support arrears that the
obligor has incurred.  The underlying principle in Louko
is that an SSDI derivative benefit may satisfy a parent’s prior child-support
obligation without retroactively modifying the child-support order. 
Because the identity of the payer changes—and the amount that the order
required the obligor to pay does not—applying the credit retroactively is not a
retroactive modification.[3]

¶ 15.         In Louko, we affirmed a holding that SSDI derivative
benefits “constituted payment of the ordered child support amount for the
period covered by the benefits.”  2011 VT 33, ¶ 12. 
Following this principle, retroactively crediting SSDI derivative benefits
against a prior child-support obligation effectively renders
any payments directly from an obligor during the creditable period into
overpayments, provided that the amount of the credit fully satisfies the
obligation.  In other words, rather than retroactively modifying father’s
child-support obligation, the magistrate determined that past payments made
through wage-withholding were overpayments during the period that the SSDI
derivative benefit applied.  Under this view, the repayment order is for
the payments directly from father’s wages that were withheld during his
disability rather than for the SSDI-derivative-benefit payments from the
SSA.  The manner in which the magistrate has ordered mother to make the
repayment—paying $100.00 per month only after she finds employment—as well as
the limits on a state judge’s ability to order the disposition of federal
benefits further support this view.

¶ 16.         The
fundamental link between this case and Louko
is the offset of retroactive SSDI-derivative-benefit payments against prior
child-support obligations during the period covered by those derivative benefit
payments.  In Louko, those obligations
were not met as they came due, whereas in this case father satisfied his
obligations in a timely manner through wage withholding—he seeks reimbursement
for payments he made rather than a credit against an arrearage.  Despite
that difference, the principle underlying Louko
guides our reasoning.  Here, as in Louko,
the amount of father’s obligation under the child-support order has not
changed; this fact supports the conclusion that the child-support order has not
been retroactively modified by the repayment order.  Under the principle
we recognized in Louko, father would be
entitled to credit the SSDI derivative benefit mother received on behalf of the
parties’ child against his prior child-support obligation.  Futhermore, the amount of the SSDI derivative benefit
exceeded father’s child-support obligation, so the payment of the derivative
benefit fully satisfied his obligation during the period for which the credit
applied.  Thus, where father also concurrently paid mother through wage
withholding, mother received a double payment during that period.  See id.
(discussing how failure to credit SSDI derivative
benefit would lead to obligee receiving “a windfall
and the possibility of a double payment”).  The conclusion that father is
entitled to reimbursement for the overpayment does expand our holding in Louko, but not to an unreasonable extent.  Cf. LaMothe v. LeBlanc, 2013 VT 21,
¶¶ 38-40, 193 Vt. 399, 70 A.3d 977 (applying rationale in Louko to child-support obligations between parties
with shared custody of child).

¶ 17.         In
concluding that father is entitled to a reimbursement for the overpayment, we
reject mother’s contention that the entirety of the SSDI derivative benefit
should be treated as a gratuity.  We recognize that where an SSDI
derivative benefit exceeds the amount of a child-support obligation, the
difference between the two should be considered as a gratuity for the
child.  Id. ¶ 28 (citing Keith v. Purvis, 2007-CA-00495-COA
(¶ 12) 982 So. 2d 1033 (Miss. Ct. App. 2008)).  Thus, under the
current order, the $178.00 from the $287.00-per-month SSDI derivative benefit that
is in excess of father’s $109.00-per-month obligation should be treated as a
gratuity to the parties’ child.  Vermont courts may not rule
otherwise.  Id. ¶ 22 (acknowledging that “the Vermont courts
do not have the authority to order the SSA to divert a portion of the
derivative benefit” to parent receiving SSDI benefit where derivative benefit
exceeds that parent’s obligation); see also id. ¶¶ 63-65 (Dooley,
J., dissenting) (discussing “serious legal obligations” imposed by federal law
on parent receiving SSDI derivative benefits on behalf of beneficiary
child).  Our rationale in Louko that
applying credit for SSDI derivative benefits “merely results in a change in the
identity of the pay[e]r” does not support treating the full amount of an SSDI
derivative benefit as a gratuity.  Louko, 2011 VT 33, ¶ 17.

¶ 18.         We
agree with the family court judge’s conclusion that a sound policy would
encourage obligor parents to make ongoing, regular payments during the pendency
of an SSDI application.  As we recognized in Louko,
years can elapse between an initial application for an SSDI benefit and the
payment of the benefit.  Id., ¶ 14. 
We accept the family court’s observation that, as our law currently stands
under Louko, “an obligor shirking his or her
duty to pay would have every incentive to stop support payments during the
pendency of their SSDI application in the hopes than an eventual lump-sum
payment might defray the accumulating arrearage.”  The policy of the
child-support statute is not served by discouraging an obligor parent from
making ongoing payments while waiting—possibly for years—for an SSDI benefit to
be credited against an arrearage that accrues between the initial application
for the benefit and its award.[4] 
See 15 V.S.A. § 650 (declaring as policy “that parents have the responsibility
to provide child support, and that child support orders should . . .
approximate insofar as possible the standard of living the child would have
enjoyed had the family remained intact”).

¶ 19.         Allowing
reimbursement for payments during the pendency of an application would
encourage obligor parents to continue support payments as they await the
outcome of their SSDI applications.  Reimbursement assures obligors that they
will recover child-support payments that are determined to be overpayments if
credit for a retroactive SSDI derivative benefit is applied at some point in
the future.  In the meantime, the child’s needs are met through ongoing
payments of the child-support order directly from the obligor.  The
availability of reimbursement for these payments denies a shirking obligor the
ability to use tomorrow’s retroactive credit as a justification for not meeting
today’s obligations.

Affirmed.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief
 Justice
 
 


 


















[1] 
Page 5A of the magistrate’s September 2013 order indicates that father is
entitled to a credit of $271.00 per month, but the magistrate’s calculations on
page 5B incorrectly lists the credit as $217.00 per month.  $271.00 is the
correct monthly amount.  The January 2007 and February 2010 orders confirm
that father’s child support obligation was $271.00 per month during the
relevant time period.  Moreover, the magistrate determined that the
monthly rate should be applied to a forty-six-month period between May 2009 and
March 2013; the magistrate determined that father’s total credit for that
period is $12,466.00, which is consistent with the correct figure.  It is
the product of multiplying forty-six months by $271.00 per month, not $217.00
per month.  Two other clerical errors on the lines below listing the
payments for April and May “2103” instead of “2013” suggest that “$217” is
similarly the result of transposing “1” and “7” in “$271.”





[2] 
We also held in Davis and reaffirmed in Cantin
that the obligor will not receive a credit for directly-paid derivative
benefits if “the court indicates expressly that the amounts payable under its
order are to be in addition to the government benefits.”  Davis,
141 Vt. at 401, 449 A.2d at 949.  See also Cantin, 171 Vt. at 662 n.5, 770
A.2d at 452-53 n.5.  As there is no such language in the underlying
child-support order in this case, the issue does not arise.

 





[3] 
The majority of states share the view that crediting derivative-benefit
payments against child-support obligations does not modify a child-support
order.  See Louko, 2011 VT 33, ¶ 13
(listing cases).





[4] 
It appears that father did not file his motion to modify as soon as he became
aware of the excess child-support payment, which has exacerbated the challenge
here.  If he had filed sooner, the amount mother would have had to
repay—over $7,000 even after father’s agreement to seek only 50% of the total
amount—might have been much less.  On appeal, mother argues that the overpayment
should be treated as a gratuity—an argument we reject for the reasons noted
above.  Under the circumstances of this case, we do not reach the question
of whether father’s delay in filing his motion to modify amounted to laches or
a waiver of some sort.